OPINION OF THE COURT
Nicholas Colabella, J.
Does the award of attorney’s fees and expenses under 22 NYCRR subpart 130-1 for frivolous conduct, based on the prosecution of a colorable claim for an improper purpose, violate the Petition Clause of the First Amendment? This question arises, among others, in the context of what this court has previously characterized as a SLAPP suit, an acronym for strategic lawsuit against public participation. In a case of apparent first impression in this State, the court answers in the negative.
Petitioner is a nonresident owner of 158.74 acres of land in the Town of North Castle — approximately 1% of the real property in the Town — and a self-professed real estate investor. Respondent Nature Conservancy (Conservancy) is a not-for-profit corporation engaged in the management and stewardship of the Mianus River Gorge Wildlife Refuge and Botanical Preserve comprised of 569 acres of undeveloped forest and woodlands along the Mianus River and its tributaries in the Towns of North Castle, Bedford and Pound Ridge. Nationally, the Conservancy is involved in the preservation of over 5.5 million acres — owning or managing some 1,100 individual nature preserves.
In the past several years, the Conservancy has actively opposed the subdivision of a 36-acre parcel of property owned by petitioner that lies directly across from the Preserve’s trail entrance. The Conservancy has participated in proceedings under the State Environmental Quality Review Act, and *728 intervened in two proceedings brought pursuant to CPLR article 78 by petitioner against the Planning Board of the Town of Bedford.
Petitioner, in turn, brought this proceeding to contest an exemption from real property taxes granted by the Town of North Castle to the Conservancy for a four-acre parcel located across from the Preserve known as the Gibb House parcel. The Gibb House parcel was afforded the exemption by respondent Marrone, the Tax Assessor, on the basis that it acted as the Preserve’s administrative center and provided housing for the Preserve’s full-time steward.
This court ruled there was a rational basis for the exemption and declared petitioner’s challenge to be frivolous on the basis that it was brought primarily to harass or maliciously injure the Conservancy for opposing petitioner’s efforts to develop the area near the Mianus River Gorge by forcing it to incur the expense of defending the exemption. The court awarded attorney’s fees and legal expenses pursuant to 22 NYCRR subpart 130-1 based solely on petitioner’s improper purpose (151 Misc 2d 164). Petitioner now moves to reargue the award of attorney’s fees and expenses. For purposes of reargument, petitioner assumes the correctness of the court’s finding as to his motivation in bringing this proceeding.
I
Petitioner argues an award based solely on improper motives is constitutionally proscribed by the Petition Clause of the First Amendment of the US Constitution, which guarantees the "right * * * to petition the Government for a redress of grievances”, because it has a chilling effect on the right of access to the courts.[1]
Petitioner contends the right of access should be protected in instances in which the court is considering an award of attorney’s fees and expenses for frivolous conduct by limiting an award to where the litigation can be found to lack a reasonable basis in fact or law and to have been brought in bad faith. This position is purportedly reflected in precedent *729 construing Federal Rules of Civil Procedure rule ll[2] in which, notwithstanding separate bases for an award of fees in rule 11 similar to 22 NYCRR subpart 130-1, several of the Federal Circuits have construed rule 11 to preclude a finding of improper purpose in the filing of a complaint if the claim asserted has a reasonable basis in fact or law.[3] Petitioner proffers that such precedent is applicable in considering 22 NYCRR subpart 130-1 because the latter was modeled after rule ll.[4]
[The court’s discussion of specific Federal cases construing rule 11 has been omitted from publication, but is briefly summarized in footnote 3.]
Significantly, none of the Federal precedent cited by petitioner, even those which apply a limited construction of rule 11, in reviewing a complaint, discuss the Petition Clause. Their analysis is based strictly on the language and legislative history of the rule. Even assuming protection of the right of *730 access was at the heart of those cases limiting rule 11, there is no parallel at bar. A special proceeding is summary in nature (Matter of Gagnon v Board of Educ., 119 AD2d 674; Matter of 22 Park Place Coop, v Board, of Assessors, 102 AD2d 893; see also, Port of N. Y. Auth. v 62 Cortlandt St. Realty Co., 18 NY2d 250), petitioner has not been déprived of access to the courts, and the proceeding was heard and disposed of on the merits.
The precedential value of cases construing rule 11 is also not as compelling as petitioner suggests for the reason that 22 NYCRR subpart 130-1 is clearly broader in reach than rule 11. Section 130-1.1 (c) defines conduct as frivolous if:
"(1) it is completely without merit in law or fact and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; or
"(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another.”
By embracing frivolous conduct undertaken for improper purpose without limitation to specific acts as in the case of rule 11, i.e., filing, it permits the court to consider more varied conduct. The court may consider events separately or within the context of the entire litigation. This is an important difference as frivolity may not always be immediately apparent. In an effort to avoid chilling legitimate advocacy, courts often initially allow the benefit of the doubt. But such largesse does not mean that such conduct is or should be immunized from later judicial scrutiny (see, 22 NYCRR 130-1.1 [c]).
Certainly, there is ample precedent for the courts to assess conduct within the larger scope of the over-all litigation. The Supreme Court noted, for example, in Bill Johnson’s Rests, v National Labor Relations Bd. (461 US 731, 747) that an award of attorney’s fees and expenses could be made at the dispositional stage upon finding that the employer’s lawsuit, although facially colorable, lacked merit and had an improper motive. The Court stated that, at that time, "[t]he employer’s suit having proved unmeritorious, the Board would be warranted in taking that fact into account in determining whether the suit had been filed in retaliation * * * If a violation is found, the Board may order the employer to reimburse the employees whom he had wrongfully sued for their attorney’s fees and other expenses” (461 US, supra, at 747). The term "unmeritorious”, as used by the Court, refers *731 merely to a losing claim, not a claim lacking any basis in fact or law.
Nothing in 22 NYCRR subpart 130-1 requires the court to ignore evidence of subjective bad faith. To the contrary, the use of the term "maliciously” in section 130-1.1 (c) (2) appears intended precisely to invite consideration of such evidence. The same inference may be drawn from the dual direction in that section to consider whether the frivolous "conduct was continued when its lack of legal or factual basis was apparent or should have been apparent to counsel”. (22 NYCRR 130-1.1 [c].) Concededly, the existence of a colorable claim should give the court pause in considering an illicit motivation, but to accept, as petitioner urges, a blanket prohibition against consideration of subjective bad faith is not only unwarranted, it invites abuse of the judicial system.
This is not to say that courts applying subpart 130-1 are bound to find actual bad faith before awarding attorney’s fees. An objective standard can be a potent tool of the courts. Using an objective standard in assessing conduct under 22 NYCRR part 130 likewise can facilitate its use in holding parties and their attorneys to some minimum accountability for their acts that a purely subjective standard might allow escape from. Using an objective standard a court may also be able to infer that an objectively unjustified claim is brought for an improper purpose (Hudson v Moore Bus. Forms, 836 F2d 1156, 1162-1163 [9th Cir 1987]; Bright v Bechtel Petroleum, 780 F2d 766, 772, n 8 [9th Cir 1986]).
The court rejects the argument that the right of access is infringed upon merely because an award of attorney’s fees and expenses may chill its exercise. Although the so-called American rule that "attorneys’ fees and disbursements are incidents of litigation and the prevailing party may not collect them * * * is based upon the high priority accorded free access to the courts and a desire to avoid placing barriers in the way of those desiring judicial redress of wrongs” (Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5), the rule has no constitutional basis in the right to petition. It reflects a policy grounded in common and statutory law (Alyeska Pipeline Serv. Co. v Wilderness Socy., 421 US 240, 247-257 [1975]; see also, Roadway Express v Piper, 447 US 752, 759-760 [1980]).
It is well established the American rule may be abrogated by contract, statute or court rule providing for an award of *732 attorney’s fees (Matter of A. G. Ship Maintenance Corp. v Lezak, supra, at 5).
The Supreme Court has also recognized the inherent authority of the Federal courts to assess attorney’s fees when a party has " ' "acted in bad faith, vexatiously, wantonly, or for oppressive reasons” ’ ” (Chambers v Nasco, Inc., 500 US —, —, 111 S Ct 2123, 2133). This so-called bad-faith exemption has been noted to resemble the improper purpose clause of Federal Rules of Civil Procedure rule 11 (500 US, at —, n 10, 111 S Ct, at 2133, n 10, supra). The imposition of sanctions in this instance transcends a court’s equitable power concerning relations between the parties and reaches a court’s inherent power to police itself, thus serving the dual purpose of "vindicating] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent’s obstinacy” (Hutto v Finney, 437 US 678, 689, n 14). The "finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar assessment of attorney’s fees’ ” (In re Itel Sec. Litig., 791 F2d 672, 675 [9th Cir 1986]; see also, Lipsig v National Student Mktg. Corp., 663 F2d 178, 182 [sustaining fee award " 'for general obstinacy unconnected with the merits of the case’ ”]). Certainly, the award of attorney’s fees for an improper purpose in the conduct of litigation under 22 NYCRR subpart 130-1 is consistent with such an exercise of authority. If the award in the Federal courts is sustainable pursuant to inherent authority, it follows the award by a State court pursuant to court rule should also be proper.
The principle underlying these exceptions to the American rule is that "in a system requiring each party to bear its own fees and costs, courts will ensure that each party really does bear its costs and does not foist expenses off on its adversaries” (In re TCI Ltd., 769 F2d 441, 446; see, Premier Elec. Constr. Co. v National Elec. Contrs. Assn., 814 F2d 358, 373 [7th Cir 1987]; Charles v Daley, 846 F2d 1057, 1075 [7th Cir 1988]).
The concern by petitioner, that an award of sanctions for bad-faith assertion of a colorable claim will chill active and zealous advocacy also has a ready retort. Unsubstantial claims brought in bad faith are precisely the type of advocacy that should be chilled.
*733 II
Petitioner argues the imposition of attorney’s fees and expenses under 22 NYCRR subpart 130-1 based solely on an improper purpose is contrary to New York’s substantive law and the State Constitution because subpart 130-1 is an equivalent of the common-law tort of malicious prosecution, which requires that the litigation be both completely lacking in merit and be brought with the intention of maliciously injuring another, and because, under New York law, the mere filing of a pleading is not deemed a tort. Summary findings by the court under subpart 130-1 purportedly violate a party’s right to have the issue of malice determined by a jury in a plenary action for malicious prosecution.
The availability of subpart 130-1 does not obviate, replace or as petitioner characterizes it "obliterate” the common-law tort of malicious prosecution. It is well established that attorney’s fees may be awarded under court rule for frivolous conduct even though the conduct may be independently tortious (In re TCI Ltd., 769 F2d 441, 445, supra). Notwithstanding a similarity between such rules and the tort of malicious prosecution (see, Szabo Food Serv. v Canteen, 823 F2d 1073, 1083 [observing, in the context of Federal Rules of Civil Procedure rule 11, that rule 11 "effectively picks up the torts of abuse of process (filing an objectively frivolous suit) and malicious prosecution (filing a colorable suit for the purpose of imposing expense on the defendant rather than for the purpose of winning”)]), there are significant differences.
One such difference lies in the purpose behind the remedies. In Business Guides v Chromatic Communications Enters. (— US —, 115 S Ct 922 [1991]), the Supreme Court observed analogously in the context of rule 11, that the imposition of sanctions under rule 11 did not constitute the creation of a Federal common law of malicious prosecution in derogation of State causes of action because the compensatory effect of the rule was only incidental and reasonably necessary to maintain the integrity of Federal practice and procedure (supra, at 934). Subpart 130-1 similarly is a critical tool in ensuring the availability of the State courts for legitimate and constructive ends. Subpart 130-1 was primarily adopted as a response to the serious problem "affecting the proper administration of justice” posed by frivolous litigation noted by the Court of Appeals in Matter of A. G. Ship Maintenance (supra, at 6; see generally, Siegel, NY Prac § 414A [2d ed 1991]).
This difference in purpose is reflected in the difference in *734 relief afforded by subpart 130-1 and an action for malicious prosecution. Subpart 130-1 is limited to a $10,000 monetary award to a party for actual expenses and reasonable attorney’s fees. Obviously, there will be cases where compensation in the maximum amount pales against the damages actually suffered as the result of a malicious prosecution. The cause of action for the tort of malicious prosecution, unlike subpart 130-1, provides a vehicle for attaining full compensation including not only attorney’s fees and legal expenses, but other compensatory damages such as loss of reputation, as well as punitive damages far in excess of $10,000 (see, e.g., Maxwell v City of New York, 156 AD2d 28, 35 [upholding verdict of $150,000]).
Petitioner distorts the position of the Court of Appeals in Matter of A. G. Ship Maintenance (supra), as suggesting that the use of malicious prosecution actions has been favored over court-imposed sanctions for frivolous litigation. The Court of Appeals comment, that such actions were preferred, was made in the context of discussing the American rule against fee shifting in the absence of an agreement between the parties, statute or court rule allowing such an award (69 NY2d, supra, at 5). The Court declined to determine whether the power to impose sanctions for frivolous proceedings was inherent to the judicial function or was merely delegable by the Legislature under the Constitution, but had no doubt as the Court’s authority to do so by plenary rule (69 NY2d, supra, at 4-6) or its desirability.
The court further rejects petitioner’s due process concern that summary findings by the court in imposing an award under 22 NYCRR subpart 130-1 deprive petitioner of a later jury determination of malice in a malicious prosecution action. The doctrine of collateral estoppel requires an identity of issues in the two actions and a full and fair opportunity to contest the finding said to be controlling (Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 71). Collateral estoppel is a "flexible doctrine which can never be rigidly or mechanically applied” (Gilberg v Barbieri, 53 NY2d 285, 292; see also, Matter of Halyalkar v Board of Regents, 72 NY2d 261, 269). The factors to be considered in determining whether there was afforded a full and fair opportunity to litigate the prior determination include " 'the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise *735 verdict, differences in the applicable law and foreseeability of future litigation’ ” (Gilberg v Barbieri, supra, at 292).
Due to the disparity in the remedies, their purposes, and the opportunity to contest the issue of malice, there is no reason to assume a court’s summary findings under 22 NYCRR subpart 130-1 would necessarily collaterally estop the petitioner from having the issue of malice decided by a jury.[5] In any event, that is a determination to be made by the court in such future action and is not a basis to withhold relief at this juncture (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713-714).
Ill
Petitioner contends the court was incorrect in classifying this proceeding as a SLAPP suit because it fails to fit within the definition of a SLAPP utilized in the case of Protect Our Mtn. Envt. v District Ct. (677 P2d 1361 [Colo 1984]) (POME) in that the subject matter of this proceeding is not the Conservancy’s prior participation in proceedings involving petitioner’s application to the Planning Board, but the administrative decision of the Tax Assessor of the Town of North Castle to grant an exemption. According to petitioner, the Conservancy was only joined as a nominal party; the essential element of a SLAPP suit — a direct challenge to a petition to the government — is absent. Petitioner also maintains that he is a citizen activist, who was acting on behalf of himself and other taxpayers, to ensure the integrity of the Town’s tax base.
Petitioner’s reliance on POME (supra) is misplaced. POME did not purport to define all SLAPP suits, it merely formulated a procedure in the context of a certain type of SLAPP suit — i.e., where a defendant was sued based on prior petitioning activity.
SLAPP suits come in many forms camouflaged as ordinary *736 lawsuits (Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl L Rev 3, 9 [1989]). The conceptual thread that binds them is that they are suits without substantial merit that are brought by private interests to "stop citizens from exercising their political rights or to punish them for having done so” (Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl L Rev 3, 5-6 [1989]; see also, Note, Counterclaim and Countersuit Harassment of Private Environmental Plaintiffs: The Problem, Its Implications, and Proposed Solutions, 74 Mich L Rev 106 [1975]; Sandifer & Smith, The Tort Suit for Damages: The New Threat to Civil Rights Organizations, 41 Brook L Rev 559 [1975]; Pring, Intimidation Suits Against Citizens: A Risk for Public-Policy Advocates, Natl LJ [July 22, 1985], at 16, col 2; Holzberg, Defamation Suits "Chill” Activists, Natl LJ [July 25, 1988], at 3, col 1; "SLAPPing the Opposition: How Developers and Officials Fight Their Critics”, Newsweek, Mar. 5, 1990, at 22). SLAPP suits function by forcing the target into the judicial arena where the SLAPP filer foists upon the target the expenses of a defense. The longer the litigation can be stretched out, the more litigation that can be churned, the greater the expense that is inflicted and the closer the SLAPP filer moves to success.[6] *8 The purpose of such gamesmanship ranges from simple retribution for past activism to discouraging future activism. Needless to say, an ultimate disposition in favor of the target often amounts merely to a pyrrhic victory. Those who lack the financial resources and emotional stamina to play out the "game” face the difficult choice of defaulting despite meritorious defenses or being brought to their knees to settle. The ripple effect of such suits in our society is enormous. Persons who have been outspoken on issues of public importance targeted in such suits or who have witnessed such suits will often choose in the future to stay silent. Short of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined.
Petitioner may be correct that the procedural context of the litigation at bar — a special proceeding to contest an administrative decision in favor of another property owner — is unprecedented for a SLAPP suit, but that uniqueness does not obviate its utility as a SLAPP. This case, like other SLAPPs, *737 attempts to turn the Petition Clause on its head by using the right to petition to indirectly punish the prior exercise of the right to petition by others.
The court adheres to its finding in this case that this is a SLAPP suit by virtue of the lack of any evidence establishing a substantial legitimate purpose. Considering that returning the Gibb House parcel to the Town’s tax roll would result in a tax of $8,345, petitioner’s pro rata reduction in his taxes based on additional tax revenue would be negligible. Can the financial resources that have been mustered in this matter be explained by anything other than an ulterior motive to strike back at the Conservancy? The case at bar presents none of the difficulty posed by cases where the primary purpose might be unclear, as noted in In re Kunstler (914 F2d 505, 518 [4th Cir 1990]).
In the case at bar, the cost of the Conservancy’s defense far exceeds the maximum award allowable under 22 NYCRR subpart 130-1 of $10,000. $10,000, therefore, is the minimum in the court’s view to compensate the Conservancy for having had to defend against petitioner’s claims, and to deter petitioner from future abuse of the judicial system. The fact alluded to by petitioner, that the Conservancy has ample resources to pay for its defense, is immaterial and continues to miss the point. The Conservancy should not have had to divert any of its resources in defense of a spurious lawsuit. The court’s lament is its inability to award the Conservancy the full reasonable value of the services of its attorneys and its expenses.
It is apparent that many of those who engage the judicial process for the burden it places on their opponent, without interest or even hope of ultimate vindication of their claims will regard the $10,000 maximum that may be imposed as an acceptable cost of litigation, especially when the ability to wage legal warfare is grossly disparate. The court’s authority to impose attorney’s fees and expenses in those instances becomes tantamount to no deterrent at all. The limitation in subpart 130-1.2 of the $10,000 maximum award to one action or proceeding only exacerbates this flaw. An action or proceeding may pend for years, involve litigation in the trial and appellate courts, perhaps even multiple trials and appeals, not to mention proceedings within an action postjudgment. At any one stage of such litigation, the fees incurred by the victimized party, as the result of frivolous conduct, may easily surpass $10,000. Once the court sanctions the frivolous actor *738 in the maximum allowed, the court is left with little to offer the victim in the way of protection against future frivolity.[7] The exhaustion of the court’s authority to sanction may even spur further frivolous conduct. In these days of ever burgeoning case loads, the judiciary is as much a victim.
Subpart 130-1 would be significantly improved and better able to achieve its salutary goals if the monetary limit was removed to allow the courts to fashion the amount of the award to the individual circumstances of the case as practiced in the Federal courts and to allow multiple awards in a single action or proceeding. As Federal Rules of Civil Procedure rule 11, for example, addresses sanctions for the filing of frivolous pleadings, Federal Rules of Civil Procedure, rule 26 (g) addresses sanctions for excessive discovery requests, Federal Rules of Civil Procedure rule 37 addresses sanctions for failure to cooperate with discovery, and Federal Rules of Civil Procedure, rule 56 (g) addresses sanctions for the filing of inappropriate affidavits in support of, or in opposition to, motions for summary judgment (see, Chambers v Nasco, Inc., 500 US, supra, at —, n 8, 111 S Ct, supra, at 2131, n 8; Zaldivar v City of Los Angeles, 780 F2d 823, 830 [9th Cir 1986]). Litigants and attorneys in the Federal courts understand the risk that they may be held accountable for their conduct in their sojourn through the judicial system, and if they fail to appreciate that risk, those courts have the wherewithal to educate them. Similar standards can certainly be employed in our State courts to guide the exercise of the court’s discretion.[8]
As an adjunct to the removal of the monetary limit in 22 NYCRR subpart 130-1, a mechanism for expediting the determination of cases alleged to be SLAPPs is essential. The application of sanctions as a deterrent to SLAPP suits "is at best a peripheral approach which has little effect on the main *739 problem * * * [Among other things] few SLAPP suits are so facially out-of-line that the attorney is in serious danger of being sanctioned for bringing the action” (Stein, SLAPP Suits: A Slap at the First Amendment, 7 Pace Envtl L Rev 45, 58 [1989]). "[A] well-pleaded SLAPP complaint, reflecting technical skill rather than objective reality, is, at least in the preliminary stages of litigation, well protected against allegations that the suit is frivolous” (id., at 52, n 15). Reluctance to grant early dismissals, as on motions to dismiss or for summary judgment, stem from two difficulties: (1) The existence of what appears to be an issue of fact; (2) the inclusion of nonSLAPP counts in the complaint (Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl L Rev 3, 17-18, n 50 [1989]). A partial solution, although not applicable in the case at bar, is the procedure formulated in POME (677 P2d 1361, supra).
POME (supra) recognized the chilling effect such suits could have on the right to petition, but also acknowledged the damage to others from baseless litigation instigated under the pretext of legitimate petitioning activity. POME held: "Accommodation of these competing concerns can best be achieved by requiring the suing party, when confronted with a motion to dismiss predicated on the First Amendment right to petition the government for redress of grievances, to demonstrate the constitutional viability of his claim ... [T]he plaintiff must make a sufficient showing to permit the court to reasonably conclude that the defendant’s petitioning activities were not immunized from liability under the First Amendment because: (1) the defendant’s administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion; and (2) the primary purpose of the defendant’s petitioning activity was to harass the plaintiff or to effectuate some other improper objective; and (3) the defendant’s petitioning activity had the capacity to adversely affect a legal interest of the plaintiff.” (677 P2d, supra, at 1368-1369).
A similar approach has been proposed which would allow a defendant to allege the constitutional nature of the activities which are the subject of the retaliator’s suit. The issue would be a question of lay/ for the court, and if the activity was deemed protected, the case could be given a preference. This would "scuttle most real SLAPP suits because the last thing the plaintiff wants is an expedited trial. Costs to the defendant, who is most always financially less secure than the *740 plaintiff, would be lessened and one of the real burdens, and intimidating factors, of SLAPP suits will have been lessened” (Stein, SLAPP Suits: A Slap at the First Amendment, 7 Pace Envtl L Rev 45, 56-57 [1989]).
Motion to reargue is granted to the extent the court grants leave to reargue and upon reargument adheres to its original decision. Petitioner shall pay to the Conservancy $10,000 as reasonable attorney’s fees within 20 days of service of the judgment to be entered.

. The right of access is also protected by the Due Process Clauses of the Fifth and Fourteenth Amendments of the US Constitution (Bounds v Smith, 430 US 817 [1977]; Lindsey v Normet, 405 US 56 [1972]) and article I, § 9 of the New York Constitution.

. Rule 11 provides in relevant part: "The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer’s knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation * * * If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney’s fee.”

. The Second, Fifth and Ninth Circuits have taken this approach (Oliveri v Thompson, 803 F2d 1265, 1275 [2d Cir 1986]; National Assn, of Govt. Empls. v National Fedn. of Fed. Empls., 844 F2d 216, 223-224 [5th Cir 1988]; Aetna Life Ins. Co. v Alla Med. Servs., 855 F2d 1470, 1476 [9th C'r 1988]). Other acts, within the purview of Federal Rules of Civil Procedure rule 11, however, have been held by court in those Circuits to be sanction-able for improper purposes despite the assertion of colorable claims (see, e.g., Aetna Life Ins. Co. v Alla Med. Servs., supra, at 1476; National Assn. of Govt. Empls. v National Fedn. of Fed. Empls., supra, at 224; Passalacqua Bldgs, v Resnick Developers S., 611 F Supp 281, 285 [SD NY 1985]). The First, Fourth and Seventh Circuits have taken a more expansive approach to rule 11 recognizing that it may be transgressed by a violation of either the reasonable inquiry clause or the improper purpose clause (Lancellotti v Fay, 909 F2d 15, 20 [1st Cir 1990]; In re Kunstler, 914 F2d 505, 518-519 [4th Cir 1990]; Melrose v Shearson/Am. Express, 898 F2d 1209, 1215 [7th Cir 1990]; Szabo Food Serv. v Canteen Corp., 823 F2d 1073, 1079 [7th Cir 1987]; In re TCI Ltd., 769 F2d 441, 445 [1985]).

. See, Siegel, NY Prac § 414A, at 632 (2d ed 1991).

. 22 NYCRR subpart 130-1 leaves the form of hearing to the court’s discretion depending on the nature of the conduct and the circumstances of the case — there need only be a reasonable opportunity to be heard. Analogously, under rule 11, an evidentiary hearing is not required. In an effort to avoid satellite litigation, the court’s award should be limited to the extent possible to the record. In many cases, the Judge’s participation provides full knowledge of the relevant facts (Chemiakin v Yefimov, 932 F2d 124, 130 [2d Cir 1991]; In re Kunstler, 914 F2d, supra, at 521; Oliveri v Thompson, 803 F2d, supra, at 1280 [2d Cir 1986]). An evidentiary hearing, however, may be appropriate in evaluating a litigant’s purpose when there are disputed issues of fact (In re Kunstler, 914 F2d, supra, at 520).

. The average duration of SLAPPs studied from filing to final court (usually appellate) disposition was nearly three years (Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl L Rev 3, 12, n 33 [1989]).

. The availability of a malicious prosecution suit, as a form of SLAPP back suggested by some legal commentators (e.g., Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl L Rev 3, 20-21 [1989]) is not the easy solution petitioner suggests. Many victims of SLAPP may be hesitant (and lacking the resources) to embark on a new round of litigation.

. Interestingly, the Court of Appeals concern in Matter of A. G. Ship Maintenance (supra), as to the ad hoc application of inherent authority to assess sanctions, is not shared to the same extent by the Supreme Court. In Chambers v Nasco, Inc. (500 US —, —, 111 S Ct 2123, 2135, supra), the Supreme Court recognized the exercise of inherent authority in the Federal courts to fill in the interstices in coverage of statutes and court rules as an important tool in administration of justice.