S01G0515. DENTON et al. v. BROWNS MILL DEVELOPMENT COMPANY, INC. et al.
(561 SE2d 431)

HINES, Justice.

We granted certiorari in *Browns Mill Dev. Co. v. Denton*, 247 Ga. App. 232 (543 SE2d 65) (2000), to determine whether the Court of Appeals was correct that trespass is a tort that falls outside the ambit of OCGA § 9-11-11.1, Georgia's anti-SLAPP (Strategic Litiga-

tion Against Public Participation) statute. Finding that trespass, as alleged here, is not covered by OCGA § 9-11-11.1, we affirm.

Denton is a DeKalb County resident who formed DeKalb Citizens for a Better Environment, an organization dedicated to preserving the county's remaining natural areas (collectively "Denton"). Browns Mill Development Company ("Browns Mill") and Peach State Development Group ("Peach State") are real estate development companies engaged in development projects on private property.

Denton sought to highlight what he perceived as the unwillingness of state and local regulatory agencies to enforce soil erosion and water protection laws. He focused on specific DeKalb County developments and documented alleged violations of federal, state, and local laws. In September 1999, Denton prepared a report titled "Land Development and Its Impact on Natural Resources: An Assessment Report of Clearing and Grading Practices Within DeKalb County," which documented the alleged failure of several developers, including Browns Mill and Peach State, to use proper soil erosion and sedimentation controls. Denton sent the report to the media and various government officials.

Following the report's release, and following Denton's opposition to Browns Mill and Peach State's rezoning and land disturbance permit applications, Denton received letters from counsel for Browns Mill and Peach State, which referred to Denton's alleged trespassing, alleged utterance of defamatory statements, and alleged deliverance of illegally-obtained photographs and documents to state and federal agencies. The letters indicated that Browns Mill and Peach State intended to pursue litigation if the allegations proved truthful. Browns Mill and Peach State then filed a complaint asserting causes of action for trespass, libel, slander, and intentional interference with business operations.

Denton notified counsel for Browns Mill and Peach State that he believed OCGA § 9-11-11.1 applied, and noted that the plaintiffs had not complied with that statute by filing the required verification. Plaintiffs' counsel, however, declined to provide verification under OCGA § 9-11-11.1. Denton moved to dismiss the complaint, which the trial court did. Browns Mill and Peach State appealed, and the Court of Appeals affirmed the trial court in part and reversed it in part. The Court of Appeals concluded, based on the verification requirement of OCGA § 9-11-11.1, that the trial court properly dismissed the slander, libel, and intentional interference with business relations claims. However, the Court of Appeals reversed the trial court's dismissal of the trespass claim, concluding that trespass was not expressly brought within the ambit of OCGA § 9-11-11.1, and

therefore, construing the statute strictly,[1] a trespass was not an act to which the procedural protections of OCGA § 9-11-11.1 extended.

The crucial statutory provision is OCGA § 9-11-11.1 (b):

> For any claim asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, both the party asserting the claim and the party's attorney of record, if any, shall be required to file, contemporaneously with the pleading containing the claim, a written verification under oath as set forth in Code Section 9-10-113. Such written verification shall certify that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation. If the claim is not verified as required by this subsection, it shall be stricken unless it is verified within ten days after the omission is called to the attention of the party asserting the claim. If a claim is verified in violation of this Code section, the court, upon motion or upon its own initiative, shall impose upon the persons who signed the verification, a represented party, or both an appropriate sanction which may include dismissal of the claim and an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading,

---

[1] The Court of Appeals stated that "[s]tatutes in derogation of common law must be strictly construed against the party asserting the right under the statute." *Browns Mill Dev. Co.*, supra at 234 (1) (b). However, this is an incorrect statement of the principle that a civil statute "which is in derogation of common law . . . 'must be strictly construed or limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms.' [Cits.]" *Daniel v. American Optical Corp.*, 251 Ga. 166, 167 (1) (304 SE2d 383) (1983). It is not a question of the burden placed on the parties to the litigation, but a question of the relationship between the common law and the law after the statute's passage.

including a reasonable attorney's fee.

The statute, obviously, does not give blanket protection against suits filed against one acting in the public arena, but requires that the plaintiff make the stated verification. Thus, the statute does not sanction conduct that is otherwise tortious, but merely provides a measure of procedural protection. Under OCGA § 9-11-11.1 (d), discovery and pending motions are stayed while the court addresses any motion filed under OCGA § 9-11-11.1 (b). Additionally, OCGA § 9-11-11.1 (e) states that "[n]othing in this Code section shall affect or preclude the right of any party to any recovery otherwise authorized by common law, statute, law, or rule."

Denton asserts that the phrase "any claim" in the first sentence of OCGA § 9-11-11.1 (b) necessarily includes the trespass claim and extends the procedural protection to that claim as well. However, the reference to "any claim" is not unqualified. That very sentence goes on to refer to

> "any claim asserted against a person or entity arising from *an act* by that person or entity *which could reasonably be construed as an act in furtherance* of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern. . . ."

(Emphasis supplied.) OCGA § 9-11-11.1 (b). Further, in subsection (c), the statute amplifies that qualifying language: the phrase

> "act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" includes any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

All acts included in the statute's amplification of the phrase "act in furtherance . . ." are acts of communication. Further, the purpose of the statute is stated in OCGA § 9-11-11.1 (a):

The General Assembly of Georgia finds and declares that it

is in the public interest to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances. The General Assembly of Georgia further finds and declares that the valid exercise of the constitutional rights of freedom of speech and the right to petition government for a redress of grievances should not be chilled through abuse of the judicial process.

Viewing the specific statements in the statute, we conclude that the intent of the statute is to encourage the exercise of free speech and afford a procedural protection to acts of communication on public issues. See *Metzler v. Rowell*, 248 Ga. App. 596, 597-599 (1) (547 SE2d 311) (2001). However, the right of free speech does not include the right to trespass onto another's land. See *Cahill v. Cobb Place Assoc.*, 271 Ga. 322 (519 SE2d 449) (1999); *Citizens for Ethical Government v. Gwinnett Place Assoc.*, 260 Ga. 245-246 (2) (392 SE2d 8) (1990). The trespass alleged here is outside the purpose of the statute and does not qualify as "an act in furtherance of the right of free speech or the right to petition government."[2] Even a trespass for the purpose of collecting information to use in a public debate is itself not an act in furtherance of the exercise of the right of free speech; the tort of trespass is completed before any act of communication occurs.

Denton argues that the entire complaint was brought with the purpose to harass, and therefore all causes of action in the complaint should fall under OCGA § 9-11-11.1. However, the procedural protections of the statute extend to "any claim . . . which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government. . . ." OCGA § 9-11-11.1 (b). Although the verification required by the statute must deny harassment as a motive for the claim, the central question under the statute is whether the claim is based on an act reasonably construed to be in furtherance of the rights of free speech or petition. A party may raise multiple causes of action in a single complaint. See OCGA § 9-11-18. And those causes of action that are not based on an act in furtherance of the rights of free speech or petition do not fall under the statute, are not afforded the procedural protections of the statute, and do not need to be verified under OCGA § 9-11-11.1 (b).

Denton also argues that imposing the requirement of verification under OCGA § 9-11-11.1 (b) for all claims in the complaint would not

---

[2] Obviously, the statute includes acts which have been held to be in furtherance of free speech, such as peacefully protesting on public property. See, e.g., *Hirsh v. City of Atlanta*, 261 Ga. 22 (401 SE2d 530) (1991).

offend the rights of the plaintiffs as the suit may proceed after verification. However, we note that verification does not end the matter; progress of the case is stayed while any verification dispute is pending and the court can ultimately reject the verification, to the plaintiffs' expense. See OCGA § 9-11-11.1 (b) & (d). More importantly, it is not a question of whether requiring verification harms the plaintiffs, but whether the statute, in fact, requires such verification. It is not this Court's role to impose a requirement beyond that found in the statute.

Finally, Denton contends that in holding that a trespass claim such as this is not within the scope of OCGA § 9-11-11.1, this Court invites developers to file false claims of trespass against those who oppose them in the public arena. However, this State has enacted laws to curb the filing of suits that are not based in fact. See OCGA §§ 9-15-14 (attorney fees for frivolous actions) and 51-7-80 et seq. (abusive litigation). Further, just as plaintiffs could falsely file trespass claims, defendants could falsely claim that their actions were within the compass of OCGA § 9-11-11.1.

The Court of Appeals correctly determined that the trespass alleged here did not fall within the ambit of OCGA § 9-11-11.1.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., Sears, P. J., and Hunstein, J., who dissent.*

FLETCHER, Chief Justice, dissenting.

Because the anti-SLAPP statute, OCGA § 9-11-11.1, requires verification for "any claim" "arising from an act" that "could reasonably be construed as an act in furtherance of the right of free speech or the right to petition the government for a redress of grievances," it covers all actions that William Douglas Denton undertook in compiling the report of illegal activities that he submitted to government officials, including taking the photographs used in the report. The majority opinion misconstrues the plain language of the anti-SLAPP statute to exclude acts taken in furtherance of First Amendment rights, and I therefore respectfully dissent.

1. According to Appellees Browns Mill Development Company, Inc. and Peach State Development Group, Inc. (collectively "the Developers"), Denton could not have taken the photographs used in his report without trespassing onto their property. Denton denied having trespassed in his answer. Assuming the Developers' allegations are true, however, the question before the Court is whether Denton's walking on the Developers' property without consent to take pictures for the report was an act that furthered, or reasonably could be construed as furthering, Denton's exercise of his free speech and petition rights and, thus, required the Developers to verify their trespass claim. Under the plain language of the statute, Denton's

acts furthered the exercise of his free speech and petition rights, and the trespass claim should have been verified.

The anti-SLAPP ("Strategic Litigation Against Public Participation") statute is broad: it requires verification for "any claim" that arises from an act that "**could reasonably be construed as an act in furtherance of** the right of free speech or the right to petition the government . . . in connection with an issue of public interest or concern."[3] The word "furtherance" in this context means "promotion" or "advancement."[4] The plain language of the statute applies the verification requirements to all acts that constitute acts of free speech and petitioning the government **as well as** any acts that are taken to promote or advance acts of free speech and petitioning. The statute covers both verbal and non-verbal acts.

Section (c) of the statute, which identifies certain acts that are statutorily-privileged,[5] supports the statute's broad application. It provides that an " 'act in furtherance of the right of free speech or the right to petition government for a redress . . .' **includes** any oral or written statement, writing, or petition."[6] This Court has held that the legislature's use of the word "include" does not limit the statute's application to those items specifically listed,[7] which is consistent with the ordinary and everyday meaning of the word "include."[8] The majority misinterprets the anti-SLAPP statute to cover only "acts of communication" of the kind identified in section (c). Reading the word "includes" according to its plain meaning, however, the anti-SLAPP statute covers, but is not limited to, the acts of speaking and writing identified in section (c).

Indeed, limiting the anti-SLAPP statute strictly to the kinds of acts in section (c) would mean non-verbal acts such as marches,[9] boycotts,[10] sit-ins,[11] picketing,[12] and other conduct that the courts have

---

[3] OCGA § 9-11-11.1 (b) (emphasis supplied).

[4] Webster's Third Int'l Dictionary, 924 (1961).

[5] OCGA § 51-5-7.

[6] OCGA § 9-11-11.1 (c) (emphasis supplied).

[7] *Housing Auth. of City of Carrollton v. Ayers*, 211 Ga. 728, 729-730 (88 SE2d 368) (1955).

[8] Black's Law Dictionary, 7th ed., p. 766 (1999) (include: "[t]o contain as a part of something"); see also OCGA § 1-3-1 (b); *Payne v. Twiggs Cty. Sch. Dist.*, 269 Ga. 361, 362 (496 SE2d 690) (1998) (except for terms of art, the Court gives all words in a statute their ordinary everyday meaning).

[9] See, e.g., *Cox v. Louisiana*, 379 U. S. 536 (85 SC 453, 13 LE2d 471) (1965); *Edwards v. South Carolina*, 372 U. S. 229 (83 SC 680, 9 LE2d 697) (1963).

[10] See, e.g., *NAACP v. Claiborne Hardware Co.*, 458 U. S. 886 (102 SC 3409, 73 LE2d 1215) (1982).

[11] See, e.g., *Brown v. Louisiana*, 383 U. S. 131 (86 SC 719, 15 LE2d 637) (1966).

[12] See, e.g., *United States v. Grace*, 461 U. S. 171, 176-177 (103 SC 1702, 75 LE2d 736) (1983) ("[t]here is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment"); *Thornhill v.*

found protected under the First Amendment[13] would all be subject to the dangers posed by SLAPP actions. Americans have used non-verbal acts as expressions of free speech and to petition the government on some of the most important matters of public concern that we as a country have ever faced. Nothing in the text of the anti-SLAPP statute suggests that the legislature intended to leave constitutionally-protected expressive speech open to SLAPP actions.

Furthermore, the language chosen by the legislature shows that it intended the anti-SLAPP statute to cover both constitutionally-protected activities **and** acts that are taken to further constitutionally-protected activities. The cardinal rule of statutory construction is to ascertain the intention of the General Assembly.[14] Here, the legislature expressly stated that its intent was to encourage citizens to participate in matters of public significance by exercising their constitutional rights to free speech and petition the government without the threat that Georgia's courts could be abused to chill the exercise of these constitutional rights.[15]

The particular danger that concerned the legislature was that SLAPP lawsuits would be used to silence those who spoke out on matters of public concern. Plaintiffs use SLAPP actions to punish their critics for having spoken out and to create an *in terrorem* effect that will dissuade other would be critics from speaking out.[16] The purpose of SLAPP lawsuits is not to win on the merits.[17] Rather, the plaintiff's aim is to bully the defendant into silence with litigation costs and to create delay.[18] As one court characterized SLAPP actions, "[s]hort of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined."[19] To protect Georgians against these abusive tactics, the General Assembly wrote the anti-SLAPP

---

*Alabama*, 310 U. S. 88 (60 SC 736, 84 LE 1093) (1939).

[13] See, e.g., *Spence v. Washington*, 418 U. S. 405 (94 SC 2727, 41 LE2d 842) (1974) (displaying flag upside down with peace symbol attached to it); *Schacht v. United States*, 398 U. S. 58 (90 SC 1555, 26 LE2d 44) (1970) (wearing military uniform in skit protesting war); *Tinker v. Des Moines Ind. Community Sch. Dist.*, 393 U. S. 503 (89 SC 733, 21 LE2d 731) (1969) (armbands); *West Virginia State Bd. of Ed. v. Barnette*, 319 U. S. 624 (63 SC 1178, 87 LE 1628) (1943) (refusal to pledge allegiance); *Stromberg v. California*, 283 U. S. 359 (51 SC 532, 75 LE 1117) (1931) (displaying red flag for Communism).

[14] OCGA § 1-3-1 (a); see also *Kemp v. City of Claxton*, 269 Ga. 173, 175 (496 SE2d 712) (1998).

[15] OCGA § 9-11-11.1 (a).

[16] See *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 940 (Mass. 1998); *600 West 115th St. Corp. v. Gutfeld*, 603 N.E.2d 930, 933 n.1 (N.Y. 1992); *Gordon v. Marrone*, 590 N.Y.S.2d 649, 656 (Supr. Ct. N.Y. 1992); see also Daniel A. Kent and Douglas M. Isenberg, *Georgia's New Anti-SLAPP Statute: Protecting the Right of Free Speech Against Meritless Claims*, Ga. Bar J., June 1997, at 26-33 ("Kent and Isenberg").

[17] *Lobiondo v. Schwartz*, 733 A.2d 516, 531 (N.J. 1999); *Duracraft Corp.*, 691 N.E.2d at 940; see also Kent and Isenberg, at 26, 28.

[18] See *600 West 115th St.*, 603 N.E.2d at 933 n.1; see also Kent and Isenberg, at 26, 28.

[19] *Gordon v. Marrone*, 590 N.Y.S.2d at 656.

statute to cover both acts of free speech and petitioning the government **and** acts taken to further these constitutional rights.

2. Looking at the plain language of the statute and the legislature's intent, Denton's act of walking on the Developers' property can reasonably be construed as furthering the exercise of his rights to free speech and petition the government, and the Developers' trespass claim therefore should have been verified. Denton is the founder of DeKalb Citizens for a Better Environment ("DeKalb Citizens"). Denton walked on the Developers' property to take the photographs that he used to document violations of state and federal law. Those same photographs were part of the DeKalb Citizens report that Denton sent to federal, state, and local elected officials, representatives of federal and state regulatory bodies, and the media. Through that report, Denton and DeKalb Citizens expressed to government officials and the public their views on violations of law at various construction sites in DeKalb County, a matter of undisputable interest and concern to the public. Under these circumstances, the act of walking onto property to take pictures is sufficiently intertwined with Denton's compiling the report to be construed reasonably as an act furthering the exercise of his constitutional rights to free speech and petition the government. Just as Denton's report was covered by the anti-SLAPP statute, the acts Denton took to compile the report are covered.

Any contention that trespass cannot be subject to verification because it is based on an inherently unlawful act is without merit. Labeling something "illegal" or "unlawful" does not mean it is without constitutional protection, much less that it cannot have furthered the exercise of constitutional rights and be subject to a verification requirement. The case books are full of instances when a defendant engaged in activity that was labeled unlawful but was protected from penalty by the First Amendment.[20]

The important point to remember is that the anti-SLAPP statute does not shield illegal activity from liability. The verification procedure is only a pleading requirement, similar to other higher pleading requirements imposed by the General Assembly. Every malpractice claim for damages against licensed professionals, both those with and without merit, must be filed with an expert affidavit, swearing

---

[20] See, e.g., *Texas v. Johnson*, 491 U. S. 397, 399, 420 (109 SC 2533, 105 LE2d 342) (1989) (flag-burning); *Grace*, 461 U. S. at 173-176, 183-184 (leafletting and picketing); *Spence*, 418 U. S. at 405-406, 415 (displaying flag upside down with peace symbol attached to it); *Schacht*, 398 U. S. at 60-63 (wearing military uniform in skit protesting war); *Brown*, 383 U. S. at 135-137, 141-143 (sit-ins); *Cox*, 379 U. S. at 538-545 (marching and demonstrating); *Edwards*, 372 U. S. at 230-233, 235-238 (marching and demonstrating); *Thornhill*, 310 U. S. at 91-92, 101-106 (picketing); *Stromberg*, 283 U. S. at 362, 368-370 (displaying red flag for Communism).

under penalty of perjury that the acts or omissions complained of do, indeed, constitute negligence.[21] The anti-SLAPP statute's verification requirement is no different. Meritorious and meritless claims are subject to sworn verification if the acts that give rise to the claim can reasonably be construed as furthering the defendant's exercise of his constitutional rights to free speech and petition the government, regardless of whether the acts are labeled lawful or unlawful. Properly verified, a plaintiff's claim can proceed the same as any other civil claim.

Had the Developers properly verified their trespass claim, then that claim could have proceeded in the same manner as other civil claims. The Developers, however, did not file the required verification, and the trial court correctly dismissed the trespass claim.

For the above reasons, I respectfully dissent. I am authorized to state that Presiding Justice Sears and Justice Hunstein join in this dissent.

DECIDED MARCH 27, 2002.

*Smith, Gambrell & Russell, Stephen E. O'Day, Andrew M. Thompson*, for appellants.

*Quirk & Quirk, Neal J. Quirk, Kevin E. Quirk, Brendan H. Parnell*, for appellees.

*Gerald R. Weber, Jr., Robert L. Tsai, Robert S. Ukeiley, Kesler T. Roberts, H. Wayne Phears*, amici curiae.