**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

July 11, 2012

# In the Court of Appeals of Georgia

A12A0639.   182   TENTH,   LLC   v.   MANHATTAN
            CONSTRUCTION COMPANY.

ANDREWS, Judge.

182 Tenth, LLC appeals from the judgment entered on a jury verdict granting Manhattan Construction Company foreclosure on a special lien in the amount of $1,750,000.00 pursuant to OCGA § 44-14-360 et seq. on real property owned by 182 Tenth. For the following reasons, we reverse and remand the case for a new trial.

Manhattan filed a claim of lien pursuant to OCGA § 44-14-361.1 against 182 Tenth's real property in the amount of $2,148,122.00 for furnishing labor, services, and materials on a construction project for the improvement of 182 Tenth's real property. The lien claim arose pursuant to a construction contract between Manhattan, the general contractor, and Mid Atlanta Properties, Inc. in the original amount of

$36,250,000.00 to build a condominium complex on 182 Tenth's property. Manhattan stopped work on the project due to non-payment and subsequently filed suit asserting claims for breach of the construction contract against Mid Atlanta and foreclosure of the lien against 182 Tenth's property. Prior to trial, Manhattan obtained an order granting partial summary judgment establishing that it was entitled at that time to recover $2,729,652.00 for amounts owed under the construction contract. After applying credits for payments received under the contract, Manhattan subsequently obtained a default judgment against Mid Atlanta for $4,886,606.00 which included the sum of $2,126,148.00 for unpaid amounts due under the contract.

1. 182 Tenth claims that the trial court erred in denying its motion for a directed verdict made after the close of the evidence.

In support of the lien foreclosure claim, Manhattan produced testimony from its project manager, along with documentation of the unpaid items, showing that Manhattan submitted payment applications for labor, services, and materials furnished to improve the property pursuant to the contract with Mid Atlanta; that 182 Tenth consented to and made payments on the contract under which items were furnished; and that Manhattan was owed $2,126,148.00 for unpaid items furnished under the contract to improve 182 Tenth's property. Manhattan also introduced

2

evidence of its default judgment against Mid Atlanta. After the testimony and documents were admitted without objection, 182 Tenth cross-examined the project manager about the furnished items for the purpose of questioning whether the unpaid sums owed to Manhattan under the contract represented lienable items under OCGA § 44-14-361 or non-lienable items. When Manhattan concluded its case, 182 Tenth rested without presenting any evidence and moved for a directed verdict. While conceding that Manhattan presented evidence of lienable claims against the property, 182 Tenth argued that it was entitled to a directed verdict because Manhattan failed to produce evidence separating lienable and non-lienable items due under the contract, so that "there is nothing in the record at this point that has given the jury any amount of expenses that are lienable on the property of 182 Tenth." The trial court denied the motion. We find no error. "[A] directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict." *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (508 SE2d 646) (1998); OCGA § 9-11-50 (a). Even if there was evidence of non-lienable items – admitted without objection – along with evidence of lienable items, it was for the jury

3

to decide, under the court's instructions, the amount of any lien that Manhattan was entitled to foreclose on the property.

2. 182 Tenth contends that the trial court erred by instructing the jury that Manhattan's pre-trial judgment against Mid Atlanta for unpaid labor, services, or materials furnished under the construction contract shifted the burden to 182 Tenth to separate lienable from non-lienable items.

The trial court correctly instructed the jury that Manhattan had the burden to prove by the preponderance of the evidence that it was entitled to foreclose the lien on 182 Tenth's property. The trial court then gave the following additional instruction regarding the burden of proof:

> In lien foreclosure cases, proof of rendition of a judgment in favor of a materialman, such as Manhattan, against a third party, such as [Mid Atlanta], is not conclusive against an owner; but it does establish, as an initial matter, that the materialman has a valid claim against the third party for the amount of the judgment. The burden is then on the owner, in this instance, 182 Tenth, to introduce evidence sufficient to rebut the correctness of the judgment. In other words, in a lien foreclosure proceeding, where a judgment has been obtained against a contracting party, the burden of separating items which are lienable from those which are non-lienable rests upon the property owner. Whether or not such evidence has been presented is a matter solely for your determination.

4

The portion of the above-quoted instruction placing on 182 Tenth "the burden of separating items which are lienable from those which are non-lienable" was error. 182 Tenth had no burden to prove which items supporting Manhattan's prior judgment against Mid Atlanta were lienable or non-lienable under OCGA § 44-14-361. As a condition precedent to foreclosing the lien on 182 Tenth's property, Manhattan obtained a judgment against Mid Atlanta for the underlying debt on the construction contract. OCGA § 44-14-361.1 (a) (3); *Stonepecker, Inc. v. Shepherd Constr. Co.*, 188 Ga. App. 513, 514 (373 SE2d 295) (1988). The reason for the rule is that 182 Tenth's property should not be subjected to the statutory lien until Manhattan obtained a judgment against Mid Atlanta establishing that Mid Atlanta owed Manhattan the amount for which Manhattan sought to assert the lien. *Tri-State Culvert Mfg., Inc. v. Crum*, 139 Ga. App. 448, 449 (228 SE2d 403) (1976). When Manhattan obtained its default judgment against Mid Atlanta, this was an adjudication of the items furnished and the amount due with respect to the construction contract. Id. at 449-450. The judgment precluded Manhattan from establishing in the lien foreclosure that 182 Tenth's liability exceeded that of Mid Atlanta or that details of the amounts owed under the contract differed from that proved in the judgment against Mid Atlanta. Id. at 450. Although 182 Tenth was not

5

precluded in the lien foreclosure from contesting the validity of Manhattan's judgment against Mid Atlanta, proof of the judgment established prima facie that Manhattan had a valid claim against Mid Atlanta for the amount of the judgment. Id. It follows that proof of the judgment shifted the burden to 182 Tenth to introduce any evidence sufficient to rebut the correctness of the judgment. Id.

But 182 Tenth did not contest the validity, correctness, or amount of the judgment that Manhattan obtained against Mid Atlanta. Rather, 182 Tenth contended by its cross-examination of Manhattan's witness and in its closing argument that many of the unpaid items supporting Manhattan's judgment against Mid Atlanta, and on which Manhattan sought to foreclose the lien, were not lienable labor, services, or materials under OCGA § 44-14-361. Even though the amount of Manhattan's judgment against Mid Atlanta was proved and not contested, this was not conclusive or prima facie proof of Manhattan's right to a lien in the full amount of the judgment. The burden remained on Manhattan to prove the lien amount to which it was entitled by producing evidence of lienable items included in the judgment against Mid Atlanta. *Jackson's Mill & Lumber Co. v. Holliday*, 108 Ga. App. 663, 665 (134 SE2d 563) (1963); *Bowen v. Collins*, 135 Ga. App. 221 (217 SE2d 193) (1975). "If, under our statutes items lienable can be separated from those which are non-lienable on a

6

foreclosure proceeding . . . the burden of doing so rests upon the plaintiff." *D. H. Overmyer Warehouse Co. v. W. C. Caye & Co.*, 116 Ga. App. 128, 132 (157 SE2d 68) (1967). "[W]here lienable and nonlienable items are included in one contract for a specific sum, and it cannot be determined what proportion is chargeable to each, the benefit of lien law is lost." *Holliday*, 108 Ga. App. at 665 (punctuation and citation omitted). In this case, Manhattan produced evidence of each item included in its judgment against Mid Atlanta, so there was a basis for separating lienable and non-lienable items. *Sears, Roebuck & Co. v. Superior Rigging & Erecting Co.*, 120 Ga. App. 412, 414 (170 SE2d 721) (1969).

The trial court's instruction erroneously placed the burden on 182 Tenth to separate lienable from non-lienable items. Nevertheless, as set forth above, the record shows that Manhattan produced evidence of each item included in its judgment against Mid Atlanta, so the jury was provided with a basis for separating lienable and non-lienable items under the trial court's instructions on this issue. Furthermore, the jury found Manhattan was entitled to foreclose a lien for $1,750,000.00, an amount substantially less than the claim of lien based on Manhattan's judgment for unpaid labor, services, or materials on the contract. This shows that, despite the erroneous instruction, the jury considered whether items were lienable or non-lienable. Because

7

182 Tenth failed to object to the erroneous instruction, appellate review on this issue is precluded unless the instruction was substantially erroneous and harmful as a matter of law under the exception set forth in OCGA § 5-5-24 (c). *Wier v. Wier*, 287 Ga. 443 (696 SE2d 658) (2010). Because we find no basis on the present record for applying the exception set forth in OCGA § 5-5-24 (c), there was no reversible error.

3. 182 Tenth claims that there was a lack of evidence in the record sufficient to support the jury's verdict finding that Manhattan was entitled to foreclose a lien on its property for $1,750,000.00 of lienable items.

The lien provided by OCGA § 44-14-361 (a) arises as to "property for which [lien claimants] furnish labor, services, or materials." Manhattan's project manager testified that the claim of lien arose from items set forth in seven unpaid payment applications submitted under the construction contract. After deductions for credits received by Manhattan, the unpaid payment applications represented items due under the contract in the total amount of $2,126,148.00. The project manager testified this amount included Manhattan's "general conditions costs" under the contract for clean-up on the job site, insurance costs, on-site staff, on-site office trailers and on-site temporary toilet system, all of which he described as "overhead costs to manage the job site." The construction contract specifically provided that Manhattan's general

8

conditions costs "includes the cost of all insurance premiums to be paid by [Manhattan]." A review of the itemized general conditions costs in the seven payment applications supports the project manager's testimony that these costs represented overhead or administrative costs, and shows charges for items described as staff, preconstruction, mobilization, phone/water, power, job site trailer, safety, job toilets, office supplies, computers, small tools, fuel and oil, temporary road, blueprints, job site copier, record drawings, progress photos, postage/courier, sidewalk barricades, job site communications, temporary fence, job signage, cleanup crew, dumpster rentals/pulls, final clean, unit certifications, builder's risk insurance, and general liability insurance. The total amount of general conditions costs was fixed under the contract at $2,767,520.00 and divided into 19 equal payments of $145,659.00 in each payment application for a total of $1,019,613.00 in the seven unpaid payment applications.

The right to the lien provided under OCGA § 44-14-361 (a) "proceeds upon the theory that the work and material or machinery for which the lien is sought have increased the value of the realty by becoming a part thereof." *Skandia Draperies Mfg. Co. v. Augusta Innkeepers, Ltd.*, 157 Ga. App. 279, 280 (277 SE2d 282) (1981). The object of the lien statutes is to secure a lien for that which actually goes into the

structure. *Amador v. Thomas*, 259 Ga. App. 835, 837 (578 SE2d 537) (2003). Because the lien provided in OCGA § 44-14-361 (a) is in derogation of the common law, "statutes involving such liens must be strictly construed in favor of the property owner and against the materialman." *Browning v. Gaster Lumber Co.*, 267 Ga. 72, 73 (475 SE2d 576) (1996). So construed, we find that the items of general conditions costs described in the payment applications were not lienable because they were not labor, services, or materials which actually went into and became a part of the property. At trial, Manhattan also sought as part of its lien over a million dollars in interest under the contract on the unpaid payment applications. Similarly, we find that interest due on the unpaid payment applications was not a lienable item.

Apart from Manhattan's overhead or administrative costs itemized under general conditions, the payment applications listed other items which a jury could conclude represented labor and materials actually furnished for improvements to the property. As Manhattan's project manager testified, the payment applications represented billing for "[t]he actual work performed on site and the office overheads." When the general conditions costs of $1,019,613.00 are deducted from the $2,126,148.00 of unpaid items under the contract, a total of $1,106,535.00 in unpaid items remains. It was disputed whether all the remaining items represented lienable

10

labor and material actually furnished to improve the property. Because there was no basis for the jury to find lienable items supporting a lien foreclosure on 182 Tenth's property in the amount of $1,750,000.00, the judgment entered on the verdict must be reversed.

Where a party prevails on appeal on a contention that the evidence was insufficient to support the verdict under OCGA § 5-6-36 (a), but the record shows the party failed to move for a directed verdict on that ground at trial, the party is entitled only to a new trial, and may not seek judgment as a matter of law. *Aldworth Co. v. England*, 281 Ga. 197, 199 (637 SE2d 198) (2006). While 182 Tenth moved for a directed verdict, it was on the ground that Manhattan failed to carry its burden to separate lienable from non-lienable items. This was not a motion for a directed verdict on the insufficiency of evidence ground raised on appeal. In any event, we conclude on the present record that the ends of justice require that the case be remanded for a new trial. OCGA § 9-11-50 (e).

*Judgment reversed and case remanded with directions. Doyle, P. J., and Boggs, J., concur.*