**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2016**

# In the Court of Appeals of Georgia

A15A2301, A15A2302. STOCK BUILDING SUPPLY, INC. v.
     PLATTE RIVER INSURANCE COMPANY; and vice versa.

MILLER, Presiding Judge.

These cases arise from a contract to build a shopping center ("the Project").

Madison Retail-Suwanee, LLC, ("Madison") the Project's owner, hired

Cannon/Estapa General Contractors, Inc. ("Cannon") as the general contractor. Stock

Building Supply ("Stock") sub-contracted with Cannon to supply labor, materials,

and services for the Project. Cannon did not complete the Project, and at the time

Cannon ceased working, Madison had paid Cannon less than the full contract price.

Cannon also failed to pay Stock the full amount it owed Stock under the sub-contract.

Consequently, in 2007 Stock filed a timely lien against the Project and perfected it

by obtaining a judgment against Cannon for the amount due under its sub-contract

with Stock. Platte River Insurance Company ("Platte"), the surety for the Project, issued a bond to discharge the lien. Stock then filed an action against Platte to collect the judgment in the amount of $93,865.27.

Platte answered the complaint, raising numerous affirmative defenses, including that Stock was estopped from enforcing the lien and that Platte was not liable under the lien based on a full payment defense.[1] Platte also asserted a counterclaim for damages against Stock. Both parties moved for summary judgment. The trial court (a) denied Platte's motion for summary judgment on judicial estoppel grounds, and (b) found there were genuine issues of material fact regarding the lien amount and Platte's full payment defense. This Court granted interlocutory review, and this appeal and cross-appeal followed. In case number A15A2301, Stock argues that it was entitled to recover all of its costs under the lien, including overhead, profit, and insurance costs. Stock also argues that Platte failed to establish its full payment defense. In its cross-appeal, case number A15A2302, Platte argues that Stock is judicially estopped from enforcing the lien because it failed to include the lien as an

---

[1] The "full payment" defense enables a property owner to avoid judgment against him if he can show that he made payments under the contract and those payments were properly appropriated to the materialmen and laborers. *Mayer Elec. Supply Co., Inc. v. Federal Ins. Co.*, 195 Ga. App. 191, 192 (393 SE2d 270) (1990).

asset during its bankruptcy proceeding. For the reasons set forth below, we affirm the trial court's orders in both appeals.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a [grant or] denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Carter v. Scott*, 320 Ga. App. 404, 405 (750 SE2d 679) (2013).

Case No. A15A2302

1. Platte argues that Stock is judicially estopped from bringing suit to enforce the lien because it failed to include its right to recover under the lien as an asset in its 2009 bankruptcy reorganization, and it subsequently chose not to reopen its bankruptcy petition to include the lien. We disagree.

The issue before us is whether a debtor seeking reorganization in a prepackaged bankruptcy petition[2] is estopped from pursuing legal claims not listed as an asset in that petition.[3]

> Since 1994 we have followed the federal doctrine of judicial estoppel, which precludes a party from asserting in a judicial proceeding a position inconsistent with a position successfully asserted by it in a prior proceeding. . . . [T]he essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. The doctrine is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings and is designed to prevent parties from making a mockery of justice through inconsistent pleadings. Thus, this equitable doctrine is invoked by a court at its discretion, and intended to prevent abuse of

---

[2] "A prepackaged bankruptcy case involves a reorganization plan that is negotiated before the filing of the case. A disclosure statement and proposed plan is generally filed with the petition, thereby shortening the bankruptcy process and greatly reducing the expenses inherent in a "normal" Chapter 11 bankruptcy case." (Punctuation omitted.) *In re Citation Corp.*, 371 B. R. 518, 521 n.4 (Banr. N.D. Ala. 2007).

[3] In *CSX Transp. Inc. v. Howell*, 296 Ga. App. 583, 588 (2) (675 SE2d 306) (2009), this Court noted in dicta that it had declined to apply judicial estoppel to cases in which the petitioner moved to reopen the bankruptcy petition to disclose the asset.

the judicial process. The circumstances under which it is appropriate are not reduced to any general formula or rule.

(Citations and punctuation omitted.) *CSX Transp., Inc. v. Howell*, 296 Ga. App. 583, 585 (675 SE2d 306) (2009).

> Moreover, courts have
>
> commonly applied [the doctrine] to preclude a bankruptcy debtor from pursuing a damages claim that he failed to include in his assets in the bankruptcy petition because a failure to reveal assets, including unliquidated tort claims, operates as a denial that such assets exist, deprives the bankruptcy court of the full information it needs to evaluate and rule upon a bankruptcy petition, and deprives creditors of resources that may satisfy unpaid obligations.

(Citations and punctuation omitted.) Id.

In *Period Homes v. Wallick*, 275 Ga. 486, 487-88 (569 SE2d 502) (2002), the Supreme Court of Georgia found that judicial estoppel was not warranted where the bankruptcy petitioner was not required to provide a schedule of assets as part of the bankruptcy proceeding, and the petitioner had no statutory duty to amend the schedule of assets. In that case, the debtor received permission to sell land while in bankruptcy proceedings, and he informed the bankruptcy trustee of a potential breach-of-contract claim related to the sale. Id. The debtor did not, however, amend

5

the schedule of assets. When the debtor later tried to bring his breach-of-contract claim, the defendant in that case argued that the debtor was estopped from bringing his claim because it was not included in the schedule of assets. Id. The Supreme Court of Georgia concluded that judicial estoppel was not warranted under the facts of the case because the debtor did not mislead the Bankruptcy Court and did not take inconsistent positions with respect to his claims. Id.

In this case, Stock filed a prepackaged Chapter 11 bankruptcy petition, which did not include or require a schedule of assets. Rather, the Bankruptcy Court specifically granted Stock additional time to file schedules within 75 days of the petition date, and further explained that if the court confirmed the plan before the expiration of that period, no schedules were required.

Moreover, Stock's bankruptcy petition included a specific provision to preserve any causes of action. This provision allowed Stock or any of its successors to pursue any claims, and it stated that the failure to include any such claims in a schedule of assets did not constitute a waiver or have any other preclusive effect. More importantly, in its order accepting and confirming the prepackaged bankruptcy petition, the Bankruptcy Court explicitly provided that Stock retained the right to

pursue any legal claims, and that the bankruptcy petition would not have any preclusive or estoppel effect.[4]

Applying the reasoning from *Period Homes*, we conclude that under the specific facts of this case, judicial estoppel does not preclude Stock from enforcing its lien. See *Period Homes*, supra, 275 Ga. at 488 (2). Stock has not concealed anything or taken a position here that is inconsistent with the position taken in the bankruptcy proceedings. Rather, we note that in its bankruptcy proceedings, Stock indicated that there would be funds available for distribution to creditors, and therefore the failure to identify the lien as a potential asset did not affect the amount the creditors received.[5] See Id. (noting that the petitioner did not accrue any benefit from the omission of a claim). Thus, applying judicial estoppel to these facts would

---

[4] The Bankruptcy Court found that such retained action provisions are permissible under 11 USC § 1123 (b) (3).

[5] Platte argues that Stock wrote off millions of dollars in debt, but it cites to no evidence in the record to support its claim. Importantly, creditors could have been willing to accept less money to resolve their claims during bankruptcy, enabling Stock to write off debt, if creditors were not fully informed of Stock's assets. Cf. *In re Grelier*, 400 BR 826, 828-31 (Bankr. N.D. Ala. 2009) (finding that judicial estoppel applied despite a reservation of rights clause in a bankruptcy petition because the petition was insufficient to inform creditors of potential assets, and that without full information the creditors agreed to a lesser amount of funds).

not further the purpose of the doctrine, namely, to protect the integrity of the judicial process. Id.

Platte's reliance on *In re USInternetworking, Inc. v. Gen. Growth Mgmt., Inc.*, 310 BR 274 (Bankr. D. Md. 2004), is unavailing. That case did not involve a prepackaged bankruptcy petition, and the Bankruptcy Court did not excuse the petitioner from filing a schedule of assets. 310 BR at 277, 281-85. Furthermore, our prior decision in *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. 454, 455-56 (442 SE2d 265) (1994), does not dictate a different result. In that case, we focused on the debtor's obligation to file a list of assets as the basis for applying judicial estoppel. *Southmark Corp.*, supra, 212 Ga. App. at 455-56. As noted here, however, Stock was not required to file a schedule of assets. Accordingly, we find that the trial court properly rejected Platte's judicial-estoppel argument.

## Case No. A15A2301

2. Stock contends that the trial court erred by denying its motion for summary judgment because (a) it was permitted to seek money to cover profit and overhead as part of its lien, and (b) Platte failed to establish its full payment defense.

(a) Whether Stock could recover the full contract price.

Stock first argues that it was permissible to include profit and overhead as costs recoverable under its lien pursuant to OCGA § 44-14-361. Stock contends that the trial court erred in relying on *182 Tenth, LLC v. Manhattan Constr. Co.*, 316 Ga. App. 776 (730 SE2d 485) (2012), to conclude otherwise because the intent of the statute has always been to permit materialmen to recover on the full price of the contract and the statute does not make a distinction between lienable and non-lienable items. Stock contends that the amendment to OCGA § 44-14-361 following this Court's decision in *182 Tenth* merely clarified that materialmen may recover the full contract price.

> The Georgia General Assembly has enacted a detailed statutory scheme for creating special liens on real property, including liens of materialmen who furnish materials for the building, repairing, or improving of the property. A materialman's lien effectively permits the transfer of liability from the person who actually contracted with the materialman for materials to be used in improving real estate to the owner of the improved property, even though that property owner usually will have no relationship with the materialman, contractual or otherwise. . . .The right to a materialman's lien is based upon the theory that the work and material . . . for which the lien is sought have increased the value of the realty by becoming a part thereof.

(Citations and punctuation omitted.) *Hill v. VNS Corp.*, 329 Ga. App. 274, 275-76 (764 SE2d 876) (2014); see also OCGA § 44-14-361.1 (a) (4) (permitting a lienholder

9

to enforce the lien directly against the property owner where the contractor has been adjudicated bankrupt). "[B]ecause materialman's liens are in derogation of the common law, statutes involving such liens must be strictly construed in favor of the property owner and against the materialman." (Citations omitted.) *Hill*, supra, 329 Ga. App. at 276.

(i) Whether OCGA § 44-14-361 enables materialmen to recover all costs under the contract or only lienable items.

Under the language of OCGA § 44-14-361 (a) (2) in effect when Stock filed its lien, all sub-contractors and materialmen may obtain a lien on the property for which they "furnish labor, services, or materials." This Court interpreted this statute to limit a materialman's ability to recover costs only for the materials and work which actually went into the structure. OCGA § 44-14-361 (2006); *Hill*, supra, 329 Ga. App. at 275-76. Thus, in *182 Tenth*, this Court held that only lienable items may be claimed, and the lien holder has the burden of proving what items are lienable. See *182 Tenth*, supra, 316 Ga. App. at 779 (2). Non-lienable items include costs of clean-up, insurance, and other "overhead costs to manage the job site." Id. at 780-81 (3).

In 2013, the Georgia Legislature amended § 44-14-361, adding the following provision: "Each special lien . . . shall include the amount due and owing the lien

claimant under the terms of its express or implied contract, subcontract, or purchase order subject to subsection (e) of Code Section 44-14-361.1."[6] OCGA § 44-14-361 (c) (2013).

Stock contends that the trial court erred by relying on *182 Tenth* because the legislature's 2013 amendments to § 44-14-361 nullified that decision, clarified that materialmen could recover the full contract price, and applied retroactively. The trial court found that the amendments to § 44-14-364 were substantive in nature and thus could not apply retroactively. We agree.

"[T]he retroactive application of statutes has long been disfavored in the law, even if it is not always forbidden." *Deal v. Coleman*, 294 Ga. 170, 174 (1) (b) (751 SE2d 337) (2013). Unless the legislature has clearly indicated its intent that a statute apply retroactively, we generally construe a statute as applying prospectively only. *Polito v. Holland*, 258 Ga. 54, 55 (2) (365 SE2d 273) (1988). Legislation that involves "mere procedural or evidentiary changes" may apply retroactively, but legislation that "affects substantive rights" will only apply prospectively. *Enger v. Erwin*, 245 Ga. 753, 754 (267 SE2d 25) (1980). Substantive law creates rights, duties,

---

[6] OCGA § 44-14-361.1 (e) limits the aggregate amount of liens recoverable under § 44-14-361 to the contract price.

11

and obligations, whereas procedural law simply dictates the enforcement of existing rights, duties, and obligations. *Polito*, supra, 258 Ga. at 55 (3).

Here, the amendment affects the parties' substantive rights by enabling them to bring an action based on the contracted price of the work, which includes overhead costs and profit, rather than just on the value of the materials and labor that directly improved the property. See, e.g., *Polito*, supra, 258 Ga. at 57 (4) (discussing a substantive change as one that would reduce damages, such as the collateral source rule of recovery). Given that the change under § 44-14-364 enables the lienholder to recover additional costs from the property owner, and we strictly construe liens in favor of the property owners, we cannot view this as a procedural change. See *Hill*, supra, 329 Ga. App. at 276. We note that in a decision issued after the amendment, this Court upheld the limitation that only lienable items were recoverable. See id. (discussing a lien obtained before the amendment and explaining that the "lien statutes allow a materialman to secure a lien only for the materials and work which actually went into the structure").

Moreover, nothing in the statute clearly indicates its intent to apply retroactively. *Deal*, supra, 294 Ga. at 175 (1) (b) (finding clear intent where the statutory language stated that the amendment "shall apply to any request . . . made

12

prior to the date of this Act"). Rather, the amendment simply states that it is intended "to provide that special liens include the amount due pursuant to an express or implied contract and interest on such amount; to provide for related matters; to repeal conflicting laws; and for other purposes." Ga. L. 2013, p. 1102. We will presume that the legislature says what it means and means what it says, *Deal*, supra, 294 Ga. at 172 (1) (a), and the legislature did not say that the statute applies retroactively.

Stock relies on Daniel Hinkel's treatise *Georgia Construction Mechanics' & Materialmen's Liens* § 7:3 (4th ed.), in support of its argument that the statute applies retroactively, but we are not persuaded. In his treatise, Hinkel opines that the amendments were designed to return the law to the correct interpretation prior to this Court's erroneous decision in *182 Tenth*. The legislature, however, failed to clearly set forth its intent that the amendment apply retroactively, and thus we will not apply it in that manner. Accordingly, we agree with the trial court's conclusion that the amendments to § 44-14-361 do not apply retroactively, and we find that the trial court properly applied the version of § 44-14-361 in effect at the time Stock obtained the lien in 2007.

(ii) Whether Stock established its lienable items.

13

The trial court found that there was a genuine issue of material fact regarding whether Stock had sought to recover only lienable items.

Stock submitted numerous invoices to show the amount it expended on the Madison Project. Stock did not, however, divide those into lienable and non-lienable items. In fact, the only evidence Stock presented to show that only lienable items were listed was the testimony of its agent, Harmon White Caldwell III. Yet Caldwell also testified that Stock did not bill Cannon separately for overhead and insurance. Thus, we agree with the trial court's conclusion that an issue of fact remains regarding whether Stock can show that the total amount it claimed under its lien covers only the lienable items.

(b) Platte's full payment defense

Stock next argues that it was entitled to summary judgment on Platte's full payment defense because Platte failed to show that the money Madison paid under the contract was applied to pay Stock. Stock concedes, for purposes of this appeal, that Cannon abandoned the Project. Platte responds that, because Cannon abandoned the Project, Platte was not subject to the lien if the cost for completing the Project exceeded the original contract price, as it did in this case.

14

Where a contractor abandons his contract, the cost of completing the work is to be deducted from the contract price in order to ascertain the amount up to which the subcontractors may claim liens; and if such deductions, together with payments previously made to the contractor, equal or exceed the entire contract price, then of course the subcontractors and materialmen have no lien, since there is nothing due under the contract . . . [T]he owner is required to show that the sums paid to the contractor were properly appropriated to materialmen and laborers or that the contractor's statutory affidavit concerning such indebtedness had been obtained.

(Citations and punctuation omitted.) *Jones Mercantile Co. v. Lyn-Har, Inc.*, 245 Ga. 812, 812 (267 SE2d 251) (1980). Moreover, under OCGA § 44-14-361.1 (e), "[i]n no event shall the aggregate amount of liens set up by Code Section 44-14-361 exceed the contract price of the improvements made or services performed."

The trial court found that there was a genuine issue of material fact with respect to whether Cannon abandoned the project. For purposes of the appeal, however, Stock has conceded abandonment. Thus, to succeed on the full payment defense, Platte must show that the payments made were properly applied to Stock's materialmen and laborers. *Mayer Elec. Supply Co. v. Federal Ins. Co.*, 195 Ga. App. 191, 192 (393 SE2d 270) (1990).

15

In an affidavit, certified public accountant Gary Fortier stated that he reviewed the jobs cost evaluation and tracked the payments made by Madison. In his affidavit, Madison representative Stephen Wisenant detailed the payments Madison made under the contract, as well as Madison's costs to complete the Project after Cannon abandoned it. Thus, Platte presented some evidence to show that the total costs of completing the project – including the amounts it paid to Cannon and the amounts it paid to complete the Project – exceeded the contract price. Platte has not shown, however, that the payments Madison made to Cannon were properly appropriated to Stock.

Platte points to copies of invoices and cancelled checks to show the payments were made. Although Platte can show payments made to Cannon, it has not shown, at least at this stage of the proceedings, that those payments were appropriated to Stock's labor, materials, and services. Accordingly, the trial court properly found that a genuine issue of material fact remained with regard to Platte's full payment defense.

In sum, in case A15A2302, we affirm the trial court's denial of Platte's motion for summary judgment on judicial estoppel grounds. In case A15A2301, we also affirm the trial court's denial of summary judgment to Stock with respect to the

interpretation of OCGA § 44-14-361 covering lienable items and Platte's full payment defense.

*Judgment affirmed. Andrews, P. J.,concurs. Branch, J., concurs fully as to Division 2 and in judgment only as to Division 1.*