**March 15, 2019**

# In the Court of Appeals of Georgia

A16A1714. ROGERS v. DUPREE et al.

A16A1715. DUPREE et al. v. ROGERS.

A16A1716. COHEN et al. v. ROGERS.

A16A1717. COHEN et al. v. ROGERS.

MERCIER, Judge.

These related appeals arise from a lawsuit brought by Joe Rogers, Jr., against David M. Cohen, Complex Law Group, LLC, and D. M. Cohen, Inc. (collectively, "Cohen"); Hylton B. Dupree, Jr., Dupree & Kimbrough LLP, and Hylton B. Dupree, Jr., P.C. (collectively, "Dupree"); and John C. Butters ("Butters"). Cohen, Butters, and Dupree moved to strike or dismiss Rogers's claims on two grounds: (1) failure to state a claim upon which relief can be granted; and (2) pursuant to OCGA § 9-11-

11.1 (2015),[1] Georgia's anti-SLAPP ("Strategic Litigation Against Public Participation") statute. The trial court denied the motions to dismiss for failure to state a claim as to all claims except a general negligence allegation. It also denied Cohen and Butters's anti-SLAPP motion. As to Dupree, however, it determined that Rogers's claims against him were subject to strike or dismissal under the anti-SLAPP statute.

In Case No. A16A1714, Rogers challenges the dismissal of his claims against Dupree on anti-SLAPP grounds. Dupree cross-appeals in Case No. A16A1715, asserting that the trial court erred in denying his motion to dismiss for failure to state a claim. Finally, Cohen and Butters challenge the denial of their motions to dismiss and/or strike in Case Nos. A16A1716 and A16A1717. For reasons that follow, we

---

[1] The legislature significantly revised OCGA § 9-11-11.1 in 2016. See Ga. L. 2016, p. 341, 342-344, § 2. The prior version of the statute, however, applies to this case, which was filed several years before the 2016 amendment. See *Atlanta Humane Society v. Harkins*, 278 Ga. 451, 454 (1) (603 SE2d 289) (2004) (noting the "substantive" nature of the anti-SLAPP statute); *Stock Building Supply v. Platte River Ins. Co.*, 336 Ga. App. 113, 118 (2) (a) (i) (783 SE2d 708) (2016) ("[L]egislation that affects substantive rights will only apply prospectively.") (citation and punctuation omitted). Unless otherwise indicated, any reference to OCGA § 9-11-11.1 in this opinion is to the pre-2016 version of the statute.

reverse the trial court's judgment in Case No. A16A1714, and we affirm in part and reverse in part the judgments in Case Nos. A16A1715, A16A1716, and A16A1717.[2]

We review the grant or denial of a motion to dismiss de novo, construing "the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor." *Emory Univ. v. Metro Atlanta Task Force for the Homeless*, 320 Ga. App. 442, 443 (740 SE2d 219) (2013) (punctuation and footnote omitted). See also *Ikomoni v. Bank of America*, 330 Ga. App. 776 (769 SE2d 527) (2015). So viewed, the record shows that Cohen, Butters, and Dupree are attorneys who represented Mye Brindle ("Brindle"), Rogers's former housekeeper. Brindle worked for Rogers over a ten-year period. Without dispute, she engaged in sexual activity with Rogers during her employment. She also made various audio recordings of their activity without Rogers's consent.

In June 2012, while still employed by Rogers, Brindle engaged Cohen and Butters to represent her in a sexual harassment claim against Rogers. After consulting

---

[2] We originally considered these appeals in March 2017. See *Rogers v. Dupree*, 340 Ga. App. 811 (799 SE2d 1) (2017). The Supreme Court of Georgia subsequently vacated our judgments and remanded the cases to us for reconsideration in light of its decision in *State v. Cohen*, 302 Ga. 616 (807 SE2d 861) (2017), a criminal appeal arising out of the same factual scenario involved here. See *Cohen v. Rogers*, 2018 Ga. LEXIS 260 (2018).

3

with Cohen and Butters, she took a "spy" camera to work, which she used to video-record a sexual encounter between Rogers and herself. Rogers was not aware that he was being recorded and did not consent to the video recording. Brindle resigned from her job at the end of June.

On July 16, 2012, Cohen sent a settlement demand letter to Rogers, asserting that Rogers had engaged in a "long history of unwelcome sexual demands and other sexual harassment and abuse toward [Brindle] as a condition of her employment," which was "well documented by numerous audio and video recordings of the acts." The letter indicated that Brindle was prepared to proceed with a lawsuit and further stated:

> It is my experience that these sensitive type matters involving claims of a sexual nature are always best resolved early and outside of public litigation. I have been involved in numerous matters where defendants engaged in a scorched earth strategy of counteraccusations, denial, attempted delay, obfuscation and refusal to address the core issues promptly and properly. Never have I seen that strategy successful. Whether through their own arrogance or "filtered" information and poor advice of defense counsel who seemed more interested in billing and protracted litigation than the best interests of their clients and that of their clients' families, the results were ultimately the same.

In virtually all of those situations, the documents, facts, witnesses and other matters that came to light through protracted litigation and media attention drew other private litigation, shareholder derivative demands for immediate removal of those individuals, intrusive governmental investigations, Department of Justice, Attorneys General or SEC involvement, as well as civil and criminal charges that resulted in disgorgement, forfeiture, lengthy incarceration periods in several instances, divorce and the destruction of families.

. . .

My point here is simply to attempt to convey my belief that it is in the best interest of all involved to avoid this type of protracted litigation, injurious publicity to all parties, etc.

At some point, Dupree joined Brindle's legal team. Although the timing is unclear, he became involved in the matter no later than August 2, 2012, when Rogers's counsel met with Cohen, Butters, and Dupree in Dupree's office to view portions of the video recording made by Brindle.

On September 14, 2012, Rogers and his counsel participated in a mediation with Brindle and her attorneys, but the parties were unable to resolve the dispute. That same day, Rogers sued Brindle in the Superior Court of Cobb County for injunctive and other relief, seeking to prevent Brindle from disseminating the video recording. A few

days later, Brindle filed a competing suit in the State Court of Fulton County, asserting that Rogers had, among other things, battered and sexually harassed her by requiring her to engage in sexual activities with him as a condition of her employment. Although the records in both suits were sealed, several news outlets reported information about the litigation and underlying claims.

On May 30, 2014, Rogers filed the instant action in Cobb County against Cohen, Butters, and Dupree, alleging that Brindle's attorneys conspired with her to illegally obtain video evidence of the sexual encounters and to extort money from Rogers by threatening in the demand letter to file frivolous and false claims regarding his private activities. With respect to the video recording, he asserted that Brindle's attorneys convinced Brindle to make the recording, advised her how to do it, and procured the spy camera for her. Rogers asserted claims for: (1) invasion of privacy – intrusion upon seclusion, solitude and private affairs; (2) invasion of privacy – public disclosure of private facts; (3) civil conspiracy; (4) intentional infliction of emotional distress; (5) conspiracy to violate the Georgia RICO Act; (6) violation of the Georgia RICO Act; (7) aiding and abetting breach of a confidential relationship; (8) general negligence/negligence per se; and (9) litigation expenses.

In response, Cohen, Butters, and Dupree filed motions to dismiss for failure to state a claim and motions to strike or dismiss pursuant to the anti-SLAPP statute, OCGA § 9-11-11.1. The trial court found that the complaint failed to state a claim for general negligence. It thus dismissed the general negligence allegation, but denied the motions to dismiss for failure to state a claim as to the remaining counts, including negligence per se.[3] The trial court also denied Cohen and Butters's anti-SLAPP motion. It ruled differently as to Dupree, however, determining that the claims against him were subject to strike or dismissal on anti-SLAPP grounds. These appeals followed.

*Case No. A16A1715*

1. For ease of discussion, we will first address Dupree's appeal in Case No. A16A1715, which challenges the denial of his motion to dismiss for failure to state a claim upon which relief can be granted. A trial court should only grant a motion to dismiss for failure to state a claim when "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in

---

[3] Although the trial court did not dismiss Rogers's RICO allegations for failure to state a claim, it dismissed one of the nine predicate acts underlying those allegations. Neither that dismissal, nor the dismissal of the general negligence claim, is at issue in these appeals.

7

support of his claim." *Ikomoni*, supra at 777. A complaint survives dismissal "[i]f, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff." Id.

In his sole enumeration of error, Dupree asserts that all of Rogers's claims are barred by OCGA § 51-7-80 et seq, Georgia's statutory scheme governing abusive litigation.[4] Under the scheme, "[a]ny person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) [w]ith malice; and (2) [w]ithout substantial justification." OCGA § 51-7-81. The legislation establishes a procedural framework for such claims, requiring, among other things, that the claimant provide detailed, pre-suit notice of the claim to the opposing party. OCGA § 51-7-84 (a). This statutory scheme offers "the exclusive remedy for abusive litigation." OCGA § 51-7-85. No other tort claims for malicious use of civil proceedings, malicious abuse of civil process, or abusive litigation are allowed. Id.

---

[4] To the extent Dupree argues in his appellate brief that Rogers's complaint failed to state a claim for other reasons, we cannot consider those arguments. See *Riggs v. State*, 319 Ga. App. 189, 198 (5) (733 SE2d 832) (2012) ("A party cannot expand his enumerations of error through argument or citation in his brief.") (citation and punctuation omitted).

(a) Asserting that Rogers's claims allege abusive litigation, Dupree argues that the complaint must be dismissed because Rogers failed to comply with the procedural requirements of OCGA § 51-7-80 et seq. We agree with Dupree as to Count 2 – invasion of privacy through the public disclosure of private facts. With respect to this claim, Rogers alleged that Dupree and the other defendants "made a public disclosure of private facts of Rogers by causing the disclosure to the public that he was having a sexual relationship with Brindle." Specifically, he asserted that the defendants "disclosed [the sexual relationship] in the public record" by filing the Fulton County complaint, which contained "frivolous claims" and "false allegations." He further claimed that they placed litigation-related documents in the "public domain" while seeking appellate review of an issue in the Fulton County action. And he asserted that Dupree and Brindle's other attorneys leaked information to the press by sending the Fulton County complaint to a news outlet.

The conduct underlying Count 2 relates entirely to the defendants' initiation, continuation, and procurement of litigation against Rogers on behalf of Brindle. Although Rogers couched Count 2 as an invasion of privacy claim, "we look to the substance and not the style of a particular claim to determine whether it amounts to a claim for abusive litigation." *Meadow Springs Recovery v. Wofford*, 319 Ga. App. 79,

9

82 (1) (734 SE2d 100) (2012). Because Count 2 centers on the defendants' litigation-related conduct – i.e., filing a civil complaint, seeking appellate review of an issue, and disclosing the litigation to the press – the invasion of privacy allegations fall within the abusive litigation statute.

As to Count 2, therefore, Rogers needed to comply with the statutory prerequisites for an abusive litigation claim. The record, however, reveals no indication of compliance. In particular, Rogers does not contend that he provided the statutory notice required by OCGA § 51-7-84 (a). Accordingly, the trial court erred in refusing to dismiss Count 2 for failure to state a claim. See *Slone v. Myers*, 288 Ga. App. 8, 11 (2) (653 SE2d 323) (2007), overruled in part on other grounds by *Reeves v. Upson Regional Medical Ctr.*, 315 Ga. App. 582 (726 SE2d 544) (2012); *LaSonde v. Chase Mortgage Co.*, 259 Ga. App. 772, 774 (2) (577 SE2d 822) (2003).

(b) We reach a different conclusion as to Rogers's claims in Counts 1 and 3 through 9. Rogers asserted in Count 1 that "[b]y working together and in concert to have Rogers filmed and recorded while engaging in sexual encounters in the privacy of his bedroom without his knowledge or consent, Defendants invaded [Rogers's] right to privacy." He further claimed that the video recording violated OCGA § 16-11-62 (2), which makes it unlawful for "[a]ny person, through the use of any device,

without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view."[5] Counts 3 through 9 similarly asserted causes of action based on Dupree's alleged participation, through a conspiracy with the other defendants, in (1) the illegal video-recording of Rogers, and (2) an extortion scheme relating to the demand letter.

These claims do not involve the "initiation, continuation, or procurement of civil proceedings." OCGA § 51-7-81. Rogers alleged that well before any legal action commenced, the defendants conspired to illegally video-record his private activities and extort money from him by threatening to file false claims regarding the video and his sex life. Although Dupree characterizes the attorneys' actions as "pre- and inter-litigation conduct," the activities underlying the claims stand apart from – and do not depend upon – the litigation brought by Brindle. Under these circumstances, Counts 1 and 3 through 9 do not fall within the abusive litigation paradigm. See *Ward v.*

---

[5] In *State v. Cohen*, our Supreme Court noted that "because video recording someone [without consent using a hidden spy camera] falls into the category of surveillance activities covered by OCGA § 16-11-62 (2), and because Brindle and her attorneys allegedly took actions to agree to make a secret video and actually video record others without the consent of all of the persons being recorded, the defendants' actions fall within the purview of OCGA § 16-11-62 (2) and any alleged conspiracy to violate that statute[.]" Supra at 627 (2) (a).

11

*Coastal Lumber Co.*, 196 Ga. App. 249, 251 (3) (395 SE2d 601) (1990) (pre-litigation activities do not give rise to viable abusive litigation claim). Thus, although we reverse the denial of Dupree's motion to dismiss Count 2 of Rogers's complaint for failure to state a claim, we affirm the trial court's judgment as to Counts 1 and 3 through 9.

*Case No. A16A1714*

2. In Case No. A16A1714, Rogers challenges the trial court's order dismissing/striking his claims against Dupree on anti-SLAPP grounds. Because we have already determined that Count 2 of Rogers's complaint should have been dismissed for failure to state a claim, we need only consider whether the trial court properly granted Dupree's anti-SLAPP motion as to Counts 1 and 3 through 9.

A SLAPP action is a lawsuit filed with the intent to silence and intimidate a party's critics or opponents by overwhelming them with the cost of a legal defense until they abandon their criticism or opposition. See *Neff v. McGee*, 346 Ga. App. 522, 524 (816 SE2d 486) (2018). To combat these lawsuits, Georgia has adopted an anti-SLAPP statute that "encourage[s] participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances." OCGA § 9-11-

12

11.1 (a). The statute requires that a detailed verification accompany causes of action that might be reasonably construed as SLAPP claims. The verification must certify:

> that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under [OCGA § 51-5-7 (4)]; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation.

OCGA § 9-11-11.1 (b).

The anti-SLAPP statute, however, only protects activities that "could reasonably be construed as . . . act[s] in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern." OCGA § 9-11-11.1 (b). Ultimately, the statute "afford[s] a procedural protection to acts of communication on public issues." *Denton v. Browns Mill Dev. Co.*, 275 Ga. 2, 6 (561 SE2d 431) (2002). Claims based

on other conduct fall outside the statute's protection and "do not need to be verified." Id.

The record shows that Rogers filed an anti-SLAPP verification pursuant to OCGA § 9-11-11.1 (b). Questioning whether Dupree was involved in the alleged extortion scheme, however, the trial court determined that Rogers falsely verified the claims against him. It thus concluded that the anti-SLAPP statute required dismissal of those claims. We disagree. Undoubtedly, a trial court may reject an anti-SLAPP verification that it deems insufficient. See *Settles Bridge Farm v. Masino*, 318 Ga. App. 576, 577 (1) (734 SE2d 456) (2012). A plain reading of the complaint, however, demonstrates that Counts 1 and 3 through 9 are not subject to the anti-SLAPP statute or its verification requirement.

As an initial matter, OCGA § 9-11-11.1 only applies to communications (i.e., written or oral statements, writings, or petitions) "made *before or to* a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or . . . in connection with an issue *under consideration or review by* a legislative, executive, or judicial body, or any other official proceeding authorized by law." OCGA § 9-11-11.1 (c) (emphasis supplied). The statute clearly contemplates that protected communication be made to, before, or in connection with some official

14

proceeding. In other words, "there must be a threshold showing that the claims could reasonably be construed as a statement or petition made in relation to or in connection with *an actual official proceeding.*" *Emory University*, supra at 445 (1) (emphasis supplied).

Dupree cannot make this threshold showing. The conduct alleged in Counts 1 and 3 through 9 – making a video recording and attempting to extort a settlement through a demand letter – occurred before any official proceeding or legal action began. Given the plain language of OCGA § 9-11-11.1 (c), we find no basis for extending the statute to the private, pre-litigation activities alleged here. See *Emory University*, supra a 445-446 (1); *In re Whittle*, 339 Ga. App. 83, 86 (1) (793 SE2d 123) (2016) ("[I]n considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant.") (footnote and punctuation omitted).

Moreover, the mere act of making a video recording cannot be viewed as a *communication* on a public issue. See *Metzler v. Rowell*, 248 Ga. App. 596, 599 (2) (547 SE2d 311) (2001) (non-communicative acts such as "trespass by pulling up land markers, defacing property, or blocking ingress and egress (without more) [are] not covered by the [anti-SLAPP] statute as none of these actions constitutes a 'written or

15

oral statement.'") (citation omitted). Although the resulting video might ultimately be shown to others or used as evidence in a lawsuit, recording a video is "not an act in furtherance of the exercise of the right of free speech; [the recording] is completed before any act of communication occurs." *Denton*, supra at 6. Perhaps more importantly, the right to speak freely or petition the government does not authorize an individual to illegally record another person or to arrange for an illegal recording to be made. See generally id. ("[T]he right of free speech does not include the right to trespass onto another's land."). Such alleged criminal conduct falls outside the purview of OCGA § 9-11-11.1. See generally id.

Similarly, Rogers's extortion allegations do not involve protected conduct. According to Rogers, Dupree and the other defendants conspired to extort money from him via the July 2012 demand letter. A demand letter that merely threatens a lawsuit generally enjoys First Amendment protection and will not support an extortion claim. See *Cohen*, supra at 623-624 & n.9. But "[t]his is not to say that a charge of extortion could not be based on intentional falsehoods or on knowingly frivolous claims." Id. at 624 n.9 (citation and punctuation omitted). And in this case, Rogers alleged that the litigation threatened by Brindle and her attorneys was false and frivolous.

16

Construed favorably to Rogers, Counts 1 and 3 through 9 assert claims based on a purported illegal scheme to video-record his private activities and extort money from him in connection with those activities. As alleged, the acts underlying this scheme are not protected by the First Amendment or the anti-SLAPP statute. See id.; *Denton*, supra. The trial court, therefore, erred in dismissing these claims against Dupree pursuant to OCGA § 9-11-11.1.[6]

*Case Nos. A16A1716 and A16A1717*

3. Like Dupree, Cohen and Butters argue that Georgia's abusive litigation statute bars Rogers's claims. For the reasons outlined in Division 1, the trial court properly rejected this argument as to Counts 1 and 3 through 9 of the complaint. Count 2, however, should have been dismissed on this basis. We thus reverse the trial court's determination on Count 2, but affirm as to the other counts.

4. In three claims of error, Cohen and Butters assert that the trial court erred in denying their motion to dismiss pursuant to the anti-SLAPP statute. As discussed in Division 2, however, OCGA § 9-11-11.1 does not apply to Counts 1 and 3 through

---

[6] We express no opinion on the merit of Rogers's claims against Dupree or the other defendants. We find only that Counts 1 and 3 through 9 are not subject to strike or dismissal under the anti-SLAPP statute.

9, the only claims remaining after the dismissal of Count 2. Accordingly, the trial court properly denied Cohen and Butters's motion to dismiss or strike on anti-SLAPP grounds.

5. Cohen and Butters also contend that Rogers breached a mediation confidentiality agreement by revealing information about the parties' mediation in the complaint. Citing this alleged breach, they assert that Rogers falsely verified his complaint under OCGA § 9-11-11.1 (b). As noted above, however, Counts 1 and 3 through 9 are not subject to the anti-SLAPP procedures and did not need to be verified. Moreover, the trial court found that information about the mediation had already been publicly disclosed by the time Rogers sued Cohen, Butters, and Dupree. Given these circumstances, the trial court properly refused to dismiss the complaint based on the alleged breach.

6. Finally, Cohen and Butters argue that Rogers's complaint should have been dismissed for failure to state a claim pursuant to the *Noerr-Pennington*[7] doctrine, a federal doctrine that, like the anti-SLAPP statute, safeguards a party's First

---

[7] See *Eastern Railroad Presidents Conference v. Noerr Motor Freight*, 365 U. S. 127, 139-140 (81 SCt 523, 5 LE2d 464) (1961); *United Mine Workers v. Pennington*, 381 U. S. 657, 669-670 (II) (85 SCt 1585, 14 LE2d 626) (1965).

Amendment right to petition the government for a redress of grievances. See *Consumer Finance Protection Bureau v. Frederick J. Hanna & Assocs.*, 114 FSupp3d. 1342, 1359 (III) (B) (1) (N.D. Ga. 2015). As we explained in Division 2, however, the First Amendment does not protect illegal conduct such as that alleged here. See *Cohen*, supra at 624 n.9; *Denton*, supra at 6.

Furthermore, not all litigation-related conduct is protected by the *Noerr-Pennington* doctrine. "To receive immunity, the conduct at issue cannot fall within the 'sham exception' to the *Noerr* doctrine. In other words, the litigation activity must be genuine." *Orange Lake Country Club v. Reed Hein & Assocs.*, 2018 U.S. Dist. LEXIS 182131, at *17 (III) (C) (M.D. Fla. 2018) (citation omitted). Rogers alleged that the litigation activity engaged in by the defendants was frivolous, grounded in false claims, and part of an extortion scheme. Accordingly, because he pled sufficient facts to suggest that the defendants' activities fell within the "sham exception" to the *Noerr-Pennington* doctrine, the trial court properly denied the motion to dismiss. See id. at *17-18.

*Judgments in Case Nos. A16A1715, A16A1716, and A16A1717 affirmed in part and reversed in part. Judgment in Case No. A16A1714 reversed. Miller, P. J.,*

*McMillian, Mercier, Reese, Brown, Goss and Markle, J., concur. Barnes, P. J., and*

*McFadden, P. J., concur in part and dissent in part.*

A16A1714. ROGERS v. DUPREE et al.

A16A1715. DUPREE et al. v. ROGERS.

A16A1716. COHEN et al. v. ROGERS.

A16A1717. COHEN et al. v. ROGERS.

BARNES, Presiding Judge, concurring in part and dissenting in part.

Because Rogers seeks damages solely for the conduct of counsel undertaken as part of the initiation, continuation, and procurement of civil proceedings on their client's behalf, all of Rogers's claims should be dismissed under the exclusive remedy provision of Georgia's statutory scheme governing abusive litigation, OCGA § 51-7-80 et seq. (the "abusive litigation statute"). Accordingly, I believe that the trial court erred by not dismissing all of Rogers's claims, and I therefore respectfully dissent in part from the majority opinion.[1]

_____

[1] I concur fully in Division 1 (a) of the majority opinion in which the majority concludes that Count 2 of Rogers's complaint (invasion of privacy through the public disclosure of private facts) should have been dismissed against Dupree under the abusive litigation statute. I also concur in Division 3 to the extent that the majority concludes that Count 2 of Rogers's complaint should have been dismissed against Cohen and Butters under the abusive litigation statute.

I previously discussed the factual and procedural background of this case in greater detail. See *Rogers v. Dupree*, 340 Ga. App. 811, 821-828 (799 SE2d 1) (2017) (Barnes, P. J., concurring in part and dissenting in part), vacated by *Cohen v. Rogers*, 2018 Ga. LEXIS 260 (2018).

Georgia's abusive litigation statute provides: "Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) With malice; and (2) Without substantial justification." OCGA § 51-7-81. The abusive litigation statute strikes a balance between the competing public interests of preserving free access to the courts and preventing "serious abuses of lawsuit filing." *Phillips v. MacDougald*, 219 Ga. App. 152, 156 (2) (g) (464 SE2d 390) (1995). This balance is intended to prevent the "proliferation of unnecessary causes of action for the alleged improper filing of lawsuits [which] would have a chilling effect on the exercise by citizens of their right of access to the courts." Id. at 157 (2) (g).

Notably, Georgia's abusive litigation statute contains an exclusive remedy provision. OCGA § 51-7-85 states: "[N]o claim other than as provided in this article or in Code Section 9-15-14 shall be allowed, whether statutory or common law, for the torts of malicious use of civil proceedings, malicious abuse of civil process, nor abusive litigation. . . . This article is the exclusive remedy for abusive litigation." And, "we look to the substance and not the style of a particular claim to determine whether it amounts to a claim for abusive litigation" that is preempted under OCGA § 51-7-85. *Meadow Springs Recovery v. Wofford*, 319 Ga. App. 79, 82 (1) (734 SE2d 100)

(2012). As we have emphasized, plaintiffs "may not avoid the requirements of the statute merely by characterizing their claims arising from the allegedly abusive lawsuit as" some other cause of action. *Slone v. Myers*, 288 Ga. App. 8, 11 (2) (653 SE2d 323) (2007), overruled in part on other grounds, *Reeves v. Upson Regional Med. Center*, 315 Ga. App. 582 (726 SE2d 544) (2012).

Rogers's claims, regardless of how characterized in his complaint, fell within the purview of the abusive litigation statute. All of the misconduct alleged to have been committed by Brindle's attorneys occurred in the course of their representation of Brindle on her sexual harassment claim and took place either during the litigation of that claim in Fulton and Cobb Counties or as part of the prelitigation activity associated with that claim that was alleged to be part of the same "scheme" and "conspiracy." Hence, all of Rogers's claims were predicated on attorney conduct that was part of "the initiation, continuation, or procurement of civil proceedings," OCGA § 51-7-81, and the claims thus were preempted by the exclusive remedy provision of the abusive litigation statute, OCGA § 51-7-85.

While the majority acknowledges that Count 2 of Rogers complaint was preempted by Georgia's abusive litigation statute, the majority concludes that the remaining counts were not preempted because they involved allegations about the

3

conduct of Brindle's attorneys relating to the video and settlement demand letter that took place before any legal action commenced. In support of this conclusion, the majority relies upon *Ward v. Coastal Lumber Co.*, 196 Ga. App. 249 (395 SE2d 601) (1990), for the proposition that pre-litigation activities do not give rise to a viable abusive litigation claim. The present case, however, is distinguishable.

*Ward* involved allegations of improper conduct in cutting and removing timber from the plaintiff's property and included two counts, one for conversion/trespass and the other for abusive litigation, both against the defendant lumber company that cut down the timber. *Ward*, 196 Ga. App. at 249-250. Without discussing the substance of the allegations of abusive litigation, this Court held that there was no legal basis for an abusive litigation claim because the plaintiff's claims "relate[d] solely to [the defendant's] pre-litigation actions." (Emphasis omitted.) Id. at 251 (3). Unlike *Ward*, the present case involves claims against attorneys arising from their representation of their client leading up to and during the course of litigation, and the prelitigation and litigation conduct all relate to the same sexual harassment claim. Moreover, Rogers's complaint alleged an ongoing "scheme" and "conspiracy" by Brindle's attorneys that began with prelitigation conduct and continued through the course of civil proceedings in Fulton and Cobb Counties. Hence, in contrast to those in *Ward*, Rogers's claims

4

against Brindle's attorneys for their alleged prelitigation misconduct in procuring the video and sending the settlement demand letter were interconnected with the litigation that ensued between Rogers and Brindle.

Furthermore, by its plain language, Georgia's abusive litigation statute applies to conduct involved in the "initiation" and "procurement" of civil proceedings. See OCGA § 51-7-81. And, the initiation and procurement of a lawsuit by an attorney typically entails at least some prelitigation activity by counsel. See, e.g., *Kendrick v. Funderburk*, 230 Ga. App. 860, 864-865 (3) (498 SE2d 147) (1998) (discussing need for counsel to conduct reasonable inquiry into the facts and the law before filing suit). Thus, in determining whether claims are preempted by the abusive litigation statute, an artificial boundary should not be placed between the prelitigation conduct of counsel and counsel's conduct during the ensuing litigation, particularly in a case like the present one, where all of the conduct is factually connected and alleged to be part of an ongoing scheme and conspiracy involving the attorneys.

For these reasons, all of Rogers's claims, including those based on alleged prelitigation misconduct by Brindle's attorneys, are preempted by Georgia's abusive litigation statute. Rogers therefore needed to comply with the statutory prerequisites for bringing an abusive litigation claim, including providing statutory notice in

5

accordance with OCGA § 51-7-84 (a), which he failed to do. See *Phillips*, 219 Ga. App. at 157 (4) ("The written notice required by OCGA § 51-7-84 (a) is a condition precedent to any claim for abusive litigation."). Consequently, this Court should conclude that the trial court erred in failing to dismiss all of Rogers's claims.[2]

---

[2] Because I conclude that all of Rogers's claims should have been dismissed under Georgia's abusive litigation statute, I do not believe that this Court needs to reach the question whether dismissal was appropriate under Georgia's Anti-SLAPP statute in light of our Supreme Court's decision in *State v. Cohen*, 302 Ga. 616 (807 SE2d 861) (2017).

A16A1714. ROGERS v. DUPREE et al.

A16A1715. DUPREE et al. v. ROGERS.

A16A1716. COHEN et al. v. ROGERS.

A16A1717. COHEN et al. v. ROGERS.


MCFADDEN, Presiding Judge, concurring in part and dissenting in part.

I agree with much of Presiding Judge Barnes's opinion. Like her, I concur fully in Division 1 (a) of the majority opinion, concur in part in Division 3 of that opinion, but dissent to the remaining divisions of that opinion. I write separately to explain where I disagree with Presiding Judge Barnes and to more fully address points raised by reconsideration in light of our Supreme Court's decision in *State v. Cohen*, 302 Ga. 616 (807 SE2d 861) (2017).

We initially decided this case on March 16, 2017. *Rogers v. Dupree*, 340 Ga. App. 811 (799 SE2d 1) (2017). The Supreme Court decided *State v. Cohen*, supra, later that year. On April 16, 2018, the Supreme Court granted certiorari in this case, vacated our 2017 decision, and remanded for reconsideration "in light of *State v. Cohen*[.]" *Cohen v. Rogers*, 2018 Ga. LEXIS 260 (2018).

*State v. Cohen* was an appeal from a trial court's grant of a general demurrer to an indictment arising out of the same events as the case before us. The issue before

the Supreme Court was whether the indictment sufficiently charged crimes. The Supreme Court held that "the allegations in the indictment are legally insufficient to support a charge of conspiracy to commit extortion," *State v. Cohen*, supra at 622 (1), but that the indictment sufficiently alleged unlawful eavesdropping or surveillance under OCGA § 16-11-62 (2). Id. at 632 (2).

On remand, we should consider whether the complaint before us sufficiently alleges torts.[1] It does not.

Presiding Judge Barnes views all of the allegations in the complaint to be a species of abusive litigation. I agree, except as to the allegations that correspond to the criminal charges of unlawful eavesdropping or surveillance under OCGA § 16-11-62 (2) upheld by our Supreme Court.

---

[1] The majority holds, in footnote 4, that our consideration of this issue is truncated by a deficiency in the enumeration of errors in case A16A1715. That holding is error. See *Felix v. State*, 271 Ga. 534, 539-540 (523 SE2d 1) (1999) ("The individual facets of appellants' attack on the legal ruling with which they took issue are arguments in support of a legal position and are not, in and of themselves, errors of law. Because the arguments supporting a position concerning a legal ruling are not themselves legal rulings, they do not have to be enunciated in the enumeration of errors in order to merit appellate consideration. Such arguments, however, must be addressed by the appellate court if necessary to its decision on the issue of the propriety of the trial court's ruling.").

All of the allegations other than unlawful eavesdropping or surveillance assert abusive litigation because they concern acts that amount to the "initiation, continuation, or *procurement* of civil proceedings." OCGA § 51-7-81 (emphasis supplied). "[T]he fundamental rules of statutory construction . . . require us to construe (this) statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." *Lyman v. Cellchem Intl.*, 300 Ga. 475, 477 (796 SE2d 255) (2017) (citation and punctuation omitted). See generally Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174-179 (2012) (discussing "Surplusage Canon"). But the majority reads "procurement" out of the statute when it holds that the defendants' pre-litigation activities fell outside of this statutory definition. The term "procure" means, among other things, "to prevail upon by persuasion[, to] induce[, or] to endeavor to bring about[.]" *Mgmt. Compensation Group/Southeast v. United Security Employee Programs*, 194 Ga. App. 99, 102 (2) (389 SE2d 525) (1989), quoting Webster's New Intl. Dictionary, 2d ed. (punctuation omitted). This broad definition can encompass pre-litigation activities.

And I fully agree with Presiding Judge Barnes that those allegations of abusive litigation are precluded because the required statutory procedure was not followed.

3

The abusive litigation statute, OCGA § 51-7-80 et seq., "is the exclusive remedy for abusive litigation." OCGA § 51-7-85. And the "condition[s] precedent" for an abusive litigation claim are a "written notice," OCGA § 51-7-84 (a), which Rogers did not give, and "final termination of the proceeding in which the alleged abusive litigation occurred," OCGA § 51-7-84 (b), which termination has not yet occurred.

But of the allegations of unlawful eavesdropping or surveillance, my reconsideration in light of *State v. Cohen*, supra, must reckon with the Supreme Court's decision that the corresponding counts in the criminal indictment sufficiently alleged violations of OCGA § 16-11-62 (2).[2] In light of that holding, I must acknowledge a distinction between conduct that would be tortious (or criminal) whether connected to litigation or not, on the one hand, and conduct that is arguably tortious only because of its connection to the "initiation, continuation, or procurement of civil proceedings," on the other. OCGA § 51-7-81. While the latter is subject to the abusive litigation statute, the former is not. For example, a tort claim founded on a violent assault would not be subject to the abusive litigation statute, even if the assault were committed to intimidate a witness.

---

[2] I acknowledge that the parties represent, as has been reported in the press, that the defendants were acquitted at trial. But this court cannot take formal cognizance of that fact, and it does not affect my analysis.

4

So while I adhere to the view that Rogers's claims regarding the demand letter fall squarely within the abusive litigation statute, I am persuaded that his claim for videotaping him without his consent would fall outside that statute — if it were a tort.

As to his allegations of criminal behavior, Rogers admits that the statutes establishing the criminal offenses of unlawful eavesdropping or surveillance under OCGA § 16-11-62 and extortion under OCGA § 16-8-16, "do not create private rights of action." His argument in support of his private claims for conduct criminalized by those statutes is that he does not rely on the statutes themselves. "Instead he claims violations of Georgia's RICO statute, for which violations of [those statutes] constitute predicate acts[.]"

But the Georgia RICO statute prohibits actions "through a pattern of racketeering activity[.]" OCGA § 16-14-4 (a). A "pattern" (outside the context of domestic terrorism) requires "at least two acts of racketeering activity." OCGA § 16-14-3 (4) (A). "Racketeering activity" is defined at OCGA § 16-14-3 (5), with a long list of predicate acts and cross-references to other statutes. Extortion is on that list at OCGA § 16-14-3 (5) (B). But unlawful surveillance isn't. And the remaining acts Rogers complains about fall squarely under the umbrella of abusive litigation. So

5

Rogers has only one predicate act, the demand letter. That's not enough for Georgia RICO.

Moreover, the viability of the extortion claim founded on the demand letter — if only as a single predicate act under RICO — must be reexamined in light of the Supreme Court's analysis in *State v. Cohen*, supra. The Supreme Court struck down the criminal extortion charge founded on that demand letter. *State v. Cohen*, 302 Ga. at 624-625 (1). In doing so, the Court reaffirmed that "mere threats to sue cannot constitute criminal extortion." Id. at 623 (1) (citations and punctuation omitted). The Court went on in a footnote to acknowledge the possibility "that a charge of extortion could . . . be based on intentional falsehoods or on knowingly frivolous claims," id. at 624 (1) n. 9 (citation and punctuation omitted), but found that the criminal indictment did not allege

> that the legal grounds supporting the threatened litigation in this case were based on intentional falsehoods or that the lawsuit was otherwise somehow unlawful such that the protection typically afforded to private litigation by the First Amendment right to petition the government for redress of grievances would not longer be available.

Id.

The majority relies on this footnote, finding that the civil claim based on extortion survives the motion to dismiss because Rogers alleged in his complaint that the threatened litigation was false and frivolous. But in construing the complaint in the context of a motion to dismiss, we are required only to accept as true Rogers's well-pleaded facts, not his legal conclusions based on those facts. *Auto-Owners Ins. Co. v. Tracy*, 344 Ga. App. 53, 54 (806 SE2d 653) (2017). Rogers does not dispute that he engaged in sexual activity with a person in his employment. His allegation that this activity did not rise to the level of sexual harassment is a legal conclusion.

For these reasons, the complaint must be dismissed.